## COMMONWEALTH *vs.* RENE COMTOIS.

Middlesex.   January 6, 1987. — April 21, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Rape. Evidence,* Corroborative evidence, Fresh complaint. Hearsay. *Witness,* Physician. *Practice, Criminal,* Instructions to jury, Verdict.

At the trial of indictments under G. L. c. 265, § 23, each charging rape and and abuse of a child under age sixteen, the judge acted within his discretion in concluding that certain statements made by the child victims to their mother, two months and one week after they left the defendant's house and control, were sufficiently prompt in the circumstances to constitute fresh complaints, where the defendant was the father of one victim and the stepfather of the other, and where the victims had lived with the defendant and had been under his control while their mother worked. [671-674]

At a rape trial, the admission of a police officer's essentially cumulative testimony concerning the victims' statements to him, even if error, created no substantial risk of a miscarriage of justice. [674-675]

At a rape trial, the judge properly admitted testimony of the child victims' pediatrician concerning statements they had made to him during a physical examination. [675]

At the trial of indictments alleging sexual offenses on "divers dates" where there was sufficient evidence as to all elements of the offenses to defeat motions for required findings of not guilty and where there was overwhelming evidence upon which a jury could find beyond a reasonable doubt that the several incidents as alleged had occurred, a general instruction to the jury on the requirement of unanimity of their verdict, where a criminal defendant neither requested a more specific instruction nor objected to the instructions given, presented no ground for reversal, as no substantial risk of miscarriage of justice was created by the trial judge's failing to instruct the jury that they must unanimously agree on a particular criminal act as the basis for the conviction under each indictment. [675-677]

INDICTMENTS found and returned in the Superior Court Department on June 12, 1984.

The cases were tried before *John P. Forte,* J., sitting under statutory authority.

The Supreme Judicial Court granted a request for direct appellate review.

*Francis K. Morris* for the defendant.

*Ellis M. Enlow,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. On June 1, 1984, a Middlesex County grand jury returned two indictments charging the defendant, Rene Comtois, with rape and abuse of a child under the age of sixteen. G. L. c. 265, § 23 (1984 ed.). The indictments charged the defendant with rape and abuse of his daughter on divers dates between September 21, 1982, and October 4, 1983; and of his stepdaughter on divers dates between October 1, 1982, and February 27, 1983.[1] Following trial, the jury returned a guilty verdict on each indictment. The defendant was sentenced to concurrent terms not to exceed twenty years at the Massachusetts Correctional Institution at Concord. He appealed. We took the case for direct appellate review, and we affirm.

The defendant claims that the judge erred in admitting testimony of the victims' mother, a Lowell police inspector, and a physician to corroborate the testimony of the two victims regarding the incidents of rape. The defendant also claims that the judge erred in failing to instruct the jury that they could not convict him without agreeing unanimously on a specific unlawful act as the basis for the conviction under each indictment.

We summarize the evidence heard by the jury.[2] The victims lived in Lowell with the defendant, their mother, and their two younger brothers. Their mother often was working away from their home from 11 A.M. until 10 or 11 P.M. The defendant, who was unemployed at the time, was the children's primary caretaker.

---

[1] During the periods covered in the indictments, the defendant's daughter was eleven and twelve years old, and his stepdaughter was thirteen and fourteen years old.

[2] We leave out some of the sordid details of the defendant's alleged behavior. We shall examine other evidence in the context of the defendant's specific contentions.

The defendant's daughter testified to four episodes of sexual abuse, the first occurring on or about September 21, 1982. She came home from school and asked the defendant, the only adult at home, for permission to go outside.[3] The defendant responded that she could do so only if she masturbated him. He then demonstrated to her what she was to do. She complied, and then she was allowed to go outside. She testified that she did not tell anyone what had happened because she was "scared" that the defendant "might hurt [her]."

The second incident occurred about one month later when the defendant's daughter again requested his permission to go outside. The defendant told her to sit on his lap and engaged her in anal intercourse. He then allowed her to go outside.

About a month after this second incident, the defendant's daughter asked the defendant if she could invite her friends into their home. He promised his consent only if she engaged in fellatio. The defendant told his daughter not to tell anybody or she would "be in trouble." She was then allowed to see her friends.

Several days before the victims moved out of the defendant's house in early October, 1983, the defendant required his daughter to submit to anal intercourse in order to obtain his permission to leave the house.

The defendant's stepdaughter testified to various sexual incidents. In October, 1982, the defendant took her for a ride in his automobile between 12 midnight and 2 A.M. He parked the automobile, "French kissed" her, and put his hands inside her shirt and felt her breasts. He then had anal intercourse with her in the front seat of the automobile. After ten or fifteen minutes, the defendant said, "Mommy doesn't know about this." His stepdaughter "just shook [her] head, yes." She did not tell her mother because she was "[s]cared of [the defendant], what he'd do to her, what he'd do to us."

---

[3] The defendant testified that it was the rule in his house that the children had to ask permission if they "wanted to go outside" or wanted to bring friends into their home.

One night in late February, 1983, the defendant had anal intercourse with his stepdaughter and performed cunnilingus on her. She did not tell her mother because she "was scared."

On another occasion the defendant told his stepdaughter that she could not record a motion picture unless she sexually stimulated him with her hand. She said she did not want to, but then complied with his request so that she could record the motion picture.[4]

Testifying in his own behalf, the defendant denied that he had any sexual contact with his daughter or stepdaughter. He attacked the victims' credibility but raised no other defense.

1. *Admissibility of corroborative testimony.* The defendant claims that the judge erred in admitting the corroborative testimony of the victims' mother, Inspector David Abbott of the Lowell police vice squad, and Dr. Eric Kaplan regarding the victims' prior statement to them describing the incidents of rape and abuse by the defendant.[5]

a. *Testimony of the victims' mother.* The mother testified that she and her four children left the defendant on October 4, 1983, because she "couldn't stand him anymore." Her daughters had not yet told her about their sexual abuse by the defendant. In late November or early December, 1983, the defendant's stepdaughter had a nightmare and said in her sleep, "I want to kill my father."[6] When her mother asked her why, she replied, "For the things he's done to me." The mother then awoke the girl and asked what she meant.

---

[4] The stepdaughter also testified that she had witnessed two sexual encounters between the defendant and her half-sister.

[5] Although the defendant maintains that the statements were erroneously admitted as excited utterances, the record clearly shows that the judge admitted the testimony as fresh complaint to corroborate the victims' testimony. Also, he instructed the jury that this testimony was admitted as evidence of fresh complaint solely to corroborate the testimony of the victims.

The defendant further mischaracterizes the record by claiming to have objected at trial to the testimony of all three corroborating witnesses. In fact, as conceded in the defendant's reply brief, he objected only to the testimony of the mother, not to that of Inspector Abbott or of Dr. Kaplan.

[6] While the defendant was the older girl's stepfather, not her natural father, the mother testified that her daughter must have meant the defendant because he "is the only father she ever knew."

Following a voir dire examination, the judge allowed the mother, as a fresh complaint witness, to recount for the jury what her daughters had told her that evening.[7] He instructed the jury, "You will hear this for one purpose only, as to whether or not it corroborates the prior witnesses [i.e. the victims]."

The mother testified that her older daughter, upon being awakened, described the several incidents when the defendant had abused her. She also mentioned that he had abused "[t]he other one, too." The mother then woke her younger daughter and asked if her father had ever touched her "in any way she shouldn't be touched." She initially responded, "No," then [broke] down crying" and described what the defendant had done to her while his wife was at work.[8]

The defendant objected to admission of this testimony because of the time that had elapsed between the alleged incidents and the daughters' statements to their mother. Although there was some uncertainty as to the exact date of the statements of the victims to the mother, she estimated that it occurred "before Christmas and after Thanksgiving [1983]." Thus, the victims complained approximately two months and one week after they had left the defendant's house on October 4, 1983.[9]

---

[7] The judge first allowed the witness to testify as to a fresh complaint by the defendant's stepdaughter, noting that her statements initially "came out involuntarily" as a result of her nightmare. Then, after inquiring how old the daughter was at the time, the judge allowed the testimony regarding her complaint the same evening, taking into consideration her age.

[8] With the exception of one significant detail, the mother's testimony regarding the fresh complaints of her daughters was essentially the same as the victims' prior testimony.

[9] In cases where a young victim has been under the control of, and in reasonable fear of, a defendant who is a close relative, the promptness of a complaint is usually measured from the date when the victim leaves the defendant's control. See *Commonwealth* v. *King,* 387 Mass. 464, 473 (1982).

Even if the time were measured from the last incident of abuse, instead of the date the victims left the defendant's house, neither complaint was unduly attenuated in the particular circumstances of this case. The daughter's complaint was made approximately two months after the last episode of abuse which occurred "a couple days before [they] moved out." The stepdaughter's complaint came between nine and nine and one-half months after she was last raped in late February, 1983. As to the defendant's daughter,

The determination whether statements are sufficiently prompt to constitute fresh complaints rests within the sound discretion of the trial judge. See *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 (1982). The test is whether the victim's actions were reasonable in the particular circumstances of the case.[10] *Id. Commonwealth* v. *King,* 387 Mass. 464, 473 (1982). *Commonwealth* v. *McGrath,* 364 Mass. 243, 247 (1973). "There is no absolute rule of law as to the time within which the victim of a sexual assault must make her first complaint of the assault in order to qualify that complaint for admission in evidence as a fresh complaint." *Commonwealth* v. *Bedard,* 6 Mass. App. Ct. 959 (1978). See *Commonwealth* v. *Bailey,* 370 Mass. 388, 391-393 (1976). Furthermore, "[i]n prosecutions involving sexual abuse of . . . children, the cases have not insisted on great promptness in the making of the complaint. . . . These flexibilities in the application of the usual fresh complaint strictures are necessitated by the facts that the perpetrators of such offenses are often relatives or close friends of the youthful victim, have his or her confidence, and by persuasion or threat, express or implied, induce the child's silence." *Commonwealth* v. *Brenner,* 18 Mass. App. Ct. 930, 931-932 (1984).

the two-month time span falls well within the permissible boundaries of fresh complaint. See *Commonwealth* v. *Brenner,* 18 Mass. App. Ct. 930 (1984) (eight year old victim complained three to four months after last incident of abuse); *Commonwealth* v. *Healey,* 8 Mass. App. Ct. 938 (1979) (complaint four months after rape not too remote in time to be admissible as fresh complaint). The approximately nine months that elapsed between the last time the defendant abused his stepdaughter and her complaint is not excessive in the circumstances of this case. See, e.g., *Commonwealth* v. *Wilson,* 12 Mass. App. Ct. 942, 943 (1981), where the Appeals Court held that complaints made four to eight months after various assaults were reasonably prompt in the circumstances.

[10] As this court stated in *Commonwealth* v. *Bailey,* 370 Mass. 388, 392 (1976): "A fresh complaint doctrine is justified on the ground that a victim's failure to make prompt complaint might be viewed by the jury as inconsistent with the charge of sexual assault (see *Commonwealth* v. *Spare,* 353 Mass. 263, 265 [1967]), and in the absence of evidence of complaint the jury might assume that none was made."

Thus, "the ground of admission is held to be the corroboration of the testimony of the complainant as a witness." *Commonwealth* v. *Sherry,* 386 Mass. 682, 691 n.5 (1982), citing *Glover* v. *Callahan,* 299 Mass. 55, 57 (1937).

In this case, both victims were young girls. See *Commonwealth* v. *Howard,* 355 Mass. 526, 530 (1969); *Commonwealth* v. *Wilson,* 12 Mass. App. Ct. 942 (1981). The defendant was one girl's father and the other's stepfather. They were living with him, and they were under his control while their mother worked. See *Commonwealth* v. *Edwards,* 7 Mass. App. Ct. 868 (1979). The defendant had warned his daughter not to tell anyone what he had done to her, stating that she would get in trouble if she did so. He also told his stepdaughter not to tell her mother. See *Commonwealth* v. *King, supra; Commonwealth* v. *Izzo,* 359 Mass. 39, 42-43 (1971). In light of the circumstances of this case, there was no abuse of discretion in admitting the corroborative testimony of the victims' mother. See *Commonwealth* v. *King, supra* at 473-474. See also *Commonwealth* v. *Brenner, supra,* and *Commonwealth* v. *Wilson, supra.*

b. *Testimony of Inspector Abbott.* Within two days of hearing her daughters' complaints, the victims' mother called the Department of Social Services, which referred the case to the Lowell police department. Pursuant to that referral, Inspector Abbott interviewed the victims on February 28, 1984. Inspector Abbott testified at trial as to the victims' statements to the police during that interview.

The defendant now claims that the judge erred in admitting this testimony of Inspector Abbott. No objection was made at trial; the claim is asserted for the first time on appeal. "It is a fundamental principle of appellate review that a prompt objection at trial is a prerequisite to the presentation of an issue for appellate review." *Commonwealth* v. *Gallison,* 383 Mass. 659, 669 (1981). We may review such alleged errors, however, to determine if there was a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). In this case there was no such risk. Inspector Abbott's testimony was "part of a continuous series of complaints." *Commonwealth* v. *Izzo, supra* at 42, quoting *Commonwealth* v. *Howard, supra* at 530. Further, Inspector Abbott's testimony was essentially cumulative of the testimony of the victims and of their mother. Consequently, even if we assume that it was

error to admit that testimony, it was "not prejudicial." See *Commonwealth* v. *Blow,* 370 Mass. 401, 404 (1976), quoting *Commonwealth* v. *Izzo, supra* at 43.

c. *Testimony of Dr. Kaplan.* On appeal the defendant also argues that it was error to admit the testimony of the victims' pediatrician, Dr. Kaplan. Again, the defendant's failure to object at trial limits our review to determining whether admission of the testimony created a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman, supra.* Dr. Kaplan testified that he had examined the victims in November, 1984, "[b]ecause of a question of sodomy." During his examination, the victims described what they believed to have happened" and indicated that September, 1983, was the approximate date of the last incident.

It has long been the rule in the Commonwealth that physicians may testify as to statements of past pain, symptoms, and conditions made to them when they were consulted by a declarant for purposes of diagnosis or treatment. *Barber* v. *Merriam,* 11 Allen 322, 324-325 (1865). See P.J. Liacos, Massachusetts Evidence 346 (5th ed. 1981 & Supp. 1985). See also Proposed Mass. R. Evid. 803 (4), which provides a similar exception to the hearsay rule. There was no error in admitting the testimony of Dr. Kaplan.

2. *Instructions on unanimity.* The defendant also claims that the judge erred in failing to instruct the jury that they could not convict him without agreeing unanimously on a particular criminal act as the basis for the conviction under each indictment.

In his charge, the judge told the jury, "Twelve of you are going to deliberate, and a jury will reach a verdict when all twelve deliberating jurors are in agreement. A verdict must be unanimous." Although the judge specifically asked if either counsel had "[a]ny additions or corrections," the defendant neither requested a more specific instruction on unanimity nor objected to the judge's instructions as given.

"It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an

opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee,* 379 Mass. 353, 357 (1979). Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979). Because the defendant did not object at trial, we limit our review to determining whether the instructions, as given, created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman, supra.*

A jury verdict must be unanimous as to each incident which is the basis of the jury's finding. See *Commonwealth* v. *Hebert,* 379 Mass. 752, 754 (1980). In the case before us, the Commonwealth contends that the general instruction on unanimity adequately conveyed this requirement to the jury. A defendant is "not entitled to any particular instruction as long as the charge as a whole was adequate." *Commonwealth* v. *Sherry,* 386 Mass. 682, 696 (1982).

In *Commonwealth* v. *Lemar,* 22 Mass. App. Ct. 170 (1986), the Appeals Court addressed the precise issue raised by the defendant in this case. Lemar was charged with indecent assault and battery on a person under fourteen years of age, commited "at divers times" between two specified dates. The evidence at trial established that criminal episodes occurred on three separate dates. As to each, there was proof "sufficient to go to the jury." *Id.* at 171. The judge instructed the jury that they must act unanimously, but he did not state in terms that a conviction required agreement of all jurors as to at least one of the incidents. As in the instant case, the defendant claimed error even though he had neither made an objection nor suggested any addition to the instructions at trial. The Appeals Court held that there was no substantial risk of a miscarriage of justice, *Commonwealth* v. *Freeman, supra,* where there was evidence on which a jury could find beyond a reasonable doubt that each of the three incidents charged had in fact occurred. *Lemar, supra* at 173. The court also noted that "[i]t does not appear likely that the jury verdict would have been different, had the judge added to his instructions." *Id.*

Applying the reasoning of the Appeals Court in *Lemar* to the case before us,[11] we note that the evidence satisfied each

---

[11] We agree with the Appeals Court that "a judge would be obliged to give a specific instruction if the defendant requested it in accordance with

element of G. L. c. 265, § 23, and was sufficient to defeat a motion for a required finding of not guilty. Mass. R. Crim. P. 25 (b), 378 Mass. 896 (1979). As to each incident charged, the Commonwealth established by overwhelming evidence that each victim was less than sixteen years old, and that the several acts of unnatural sexual intercourse had occurred. Accordingly, it does not appear likely that the jury verdict would have been different even if the judge had given the specific instruction now requested by the defendant. Thus, even if we conclude that the judge's instructions were in error, they created no substantial risk that a miscarriage of justice occurred.

*Judgments affirmed.*

---

the normal procedure of Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979)." *Lemar, supra* at 172.