COMMONWEALTH *vs.* JOSEPH MONTANINO.

No. 88-P-1331.

Middlesex. January 9, 1990. - April 17, 1990.

Present: BROWN, SMITH, & JACOBS, JJ.

Further appellate review granted, 407 Mass. 1104 (1990).

*Unnatural Sexual Intercourse. Evidence,* Redirect examination, Opinion,
    Fresh complaint, Prior inconsistent statement, Prior misconduct, Repu-
    tation. *Practice, Criminal,* Indictment.

The record of testimony of a prosecution witness at a rape trial did not
    demonstrate that he improperly commented on the victim's credibility
    or testified to any opinion on that subject. [521-522]
At a rape trial, where the evidence showed that four years had elapsed
    between the alleged incidents and the victim's first report to the police,
    the judge erred in instructing on the doctrine of fresh complaint; how-
    ever, the defendant demonstrated no prejudice from the giving of the
    instruction. [522-523, 523-524]
There was no merit to a criminal defendant's contention on appeal that
    certain evidence he had introduced at trial was inadmissible. [523]
At a rape trial the judge improperly allowed a question to the victim on
    direct examination, with respect to his state of mind in reporting the
    incidents four years after they occurred; however, no prejudice was
    demonstrated where the witness's ambiguous answer was interrupted
    and the subject never arose again. [524-525]
No issue with respect to a criminal defendant's reputation for truthfulness
    was presented on the appeal from his convictions. [525-526]
There was no merit to a defendant's contention that the indictments
    against him should have been dismissed for being insufficiently specific
    with respect to the dates of sexual offenses. [526]

INDICTMENTS found and returned in the Superior Court
Department on May 31, 1985.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Henry P. Sorett* for the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the
Commonwealth.

SMITH, J. On May 31, 1985, a Middlesex County grand
jury returned two indictments against the defendant. Each

indictment charged that he had engaged in unnatural sexual intercourse with a fifteen year old youth ("Paul").[1] The incidents allegedly occurred between January and April, 1981. A jury convicted the defendant of crimes set forth in both indictments. The defendant raises five issues on appeal. They are that the judge committed error in (1) permitting a police officer to give his "opinion" that Paul's testimony was credible, (2) injecting the "fresh complaint concept" in the case, (3) allowing the prosecution to introduce evidence of prior bad acts of the defendant, (4) ruling that the defendant's character witnesses could be cross-examined in reference to their awareness of other allegations of sexual misconduct by the defendant, and (5) refusing to dismiss the indictments for lack of specificity.

We summarize the evidence. On direct examination, Paul testified that in 1981 he was a member of a Boy Scout troop and that the defendant was the scoutmaster.[2] The first incident occurred following a scout meeting as the defendant was driving him home. Paul stated that, while he was sitting sideways on the defendant's lap and steering the defendant's sportscar upon invitation, his genitals were rubbed by the defendant. Subsequently, the defendant parked the car on a side street near Harvard Square and then unfastened and pulled down Paul's pants. Paul testified that the defendant performed fellatio on him for about fifteen minutes. After the episode, the defendant asked Paul if he was going to tell anyone. Paul said he would not. The defendant then drove him home.

Paul testified that he told no one of the incident because he was "confused," "embarrassed," "scared," and "just didn't know what was right." He continued to attend scout

[1]Two additional indictments against the defendant were returned at the same time. Those indictments charged the defendant with indecent assault and battery on two other youths who were under fourteen. After a trial, the defendant was convicted on one indictment and acquitted on the other. See *Commonwealth* v. *Montanino*, 27 Mass. App. Ct. 130 (1989).

[2]Paul was fifteen years old at the time of the alleged incidents, nineteen years old when he first discussed and reported the incidents, and twenty-one years old at the time of the trial.

meetings because he "just wanted to try and forget it, that it wouldn't ever happen again." He said he "was confused, but . . . still for some reason trusted . . . [the defendant] because he was . . . [the] Boy Scout leader and . . . [Paul] looked up to him at that time."

According to Paul, several weeks elapsed without further incident. During this period, he and the defendant discussed prerequisites to becoming a Star Scout, and the defendant offered to assist him in obtaining the necessary merit badges. They agreed to meet on a Saturday. The defendant picked Paul up at his home in Cambridge and brought him to the defendant's apartment in Somerville. Paul stated that this was the only time he had been there. After describing the apartment, Paul stated that he and the defendant sat down on a couch in the den. The defendant then unfastened Paul's pants as well as his own and performed fellatio on Paul. He stated that the defendant next attempted, without success, to force Paul to perform fellatio on him. According to Paul, the defendant then told him to lie face down on the floor. Paul complied and the defendant lay on top of him and engaged in anal intercourse. Paul testified that after a few minutes he was able to roll over, and the defendant got off him. The defendant, who appeared to Paul to be nervous, asked Paul if he would tell anyone what happened. Again, Paul said he would not. At Paul's request the defendant drove him home. Paul testified that he told no one about the occurrences in the defendant's apartment. He withdrew from the troop a few weeks later. Paul stated that he told the defendant he was quitting as a result of increased time demands of his job, but that the real reason was because of what happened and because he hated the defendant. According to Paul, both incidents occurred between January and April, 1981.

From the time of the incidents in 1981 until the spring of 1985, Paul remained silent. He testified that his family had moved from Cambridge to Hingham and that at some point he learned the defendant had become a Cambridge police officer. He stated that during this time the incidents with the defendant "started to erase from [his] mind." In the spring

of 1985, however, he discussed the incidents, for the first time, with his sister-in-law. A few days later, he met with Sergeant Leonard Saviagno (the sergeant) of the Cambridge police department. Paul testified that during the course of a series of interviews with Sergeant Saviagno, he told him "everything" about the two incidents.

During cross-examination, defense counsel attacked Paul's credibility by focusing on his four-year delay in reporting the incidents. In addition, defense counsel used the contents of Paul's statements to Sergeant Saviagno to probe for inconsistencies with Paul's testimony. Paul admitted he told Sergeant Saviagno that the incidents had occurred at several times different from those to which he testified in his direct examination. He also conceded a failure to inform the sergeant that the defendant had engaged in oral sex with him during the first incident. On redirect examination, Paul explained that these inconsistencies had occurred during his first interview with Sergeant Saviagno when he was nervous and did not know the sergeant.[3]

1. *The "opinion" testimony.* Sergeant Saviagno was the next Commonwealth witness. He testified that he met with Paul "three or four times" in the spring of 1985 and they discussed "some incidents" involving the defendant. The prosecutor did not ask Sergeant Saviagno for the details of those conversations. The sergeant, in concluding his testimony on direct examination, stated that as a result of his conversations with Paul "some charges" were brought against the defendant.

On cross-examination, defense counsel again used the contents of Paul's statements to Saviagno to reemphasize the inconsistencies in Paul's testimony. Saviagno testified that during a tape recorded interview Paul stated that the incidents could have occurred at times different from those given in his

---

[3]The defendant testified. He denied having engaged in any sexual acts with Paul. He also denied that Paul had ever been alone with him in his apartment and explained Paul's accurate description of the apartment's interior by stating that Paul and other Boy Scouts had regularly attended meetings there. An assistant scoutmaster corroborated the defendant's testimony about the meetings in the apartment.

trial testimony. He also stated that, in the tape recorded interview, Paul had not included any reference to oral sex during the first incident.

On redirect examination, Saviagno explained the method by which he and Paul, during the initial interview, attempted to narrow the possible dates of the incidents. The prosecutor then asked Saviagno about his job assignments in the Cambridge police department. Saviagno testified, over the defendant's objections, that one of his assignments was as commanding officer of the sexual assault unit and, in that capacity, he had investigated approximately 300 cases of sexual assault. Saviagno was then asked about the process used in interviewing alleged victims of sexual assaults. He testified that the process of interviewing "victims" in those cases varied according to the age, demeanor, and mental state of the "victim." He stated that children, generally, would be interviewed four or five times, whereas adults were typically interviewed only two or three times. The prosecutor then engaged the witness in the following colloquy:

> PROSECUTOR: "And, would you tell us, Sergeant, whether or not you have an opinion as to whether in your initial discussions with victims, [you] tend to get more or less than the complete details that you eventually learn regarding the incident?"
>
> . . .
>
> SAVIAGNO: "Yes."
>
> PROSECUTOR: "And, would you tell us what that opinion is, Sergeant?"
>
> DEFENSE COUNSEL: "Objection."
>
> THE COURT: "Overruled. He may elaborate."
>
> SAVIAGNO: "The first, usually the first meeting with the victim is a process of laying the groundwork for an interview, which is just to meet the victim, gain the victim's confidence, to reaffirm the victim that we are there to be supportive, and that the information we get is going to have to be reported and passed on to the District Attorney and get the person comfortable as to what the process is, the court process, supportive processes, psy-

chological supports, and let the victim know exactly what they are going to have to contend with in the course of the prosecution of the case."

In response to other questions, Saviagno explained that in some cases a "victim" might reveal what happened in detail at the first meeting, but in most cases "victims" provide further details of the incident over the course of the interview process.

The witness was then asked:

> PROSECUTOR: "And at some point in your discussions with . . . [Paul], in this case, Sergeant, did he tell you about the alleged oral sexual contact that had occurred in the car?"
> DEFENSE COUNSEL: "Objection."
> SAVIAGNO: "Yes; he did."
> THE COURT: "No. She can have that."
> SAVIAGNO: "Yes; he did, Your Honor."

On appeal, the defendant claims that the Commonwealth was allowed to introduce Saviagno's opinion that "the changes in . . . [Paul's] story were consistent with the way in which truthful victims of sexual assaults relate their stories," and the admission of such testimony was error because it allowed the witness to comment on Paul's credibility. See *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706-707 (1985); *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986); *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 401-402 (1983); *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708 (1984), for cases where the court held that one witness cannot be asked for his opinion or cannot otherwise comment on the credibility of other witnesses.

Contrary to the defendant's assertion, Saviagno did not give his "opinion" on Paul's credibility or on any other topic. Contrast *Commonwealth* v. *Wolcott*, ante 200, 207 (1990). Clearly, one of the prosecutor's questions was in a form devised to obtain the opinion of a witness. Despite the form of the question, however, Saviagno's answer did not contain his

opinion. Rather, his response was a description of the process used in interviewing individuals who claimed to be victims of sexual assaults.[4]

The limited nature of Saviagno's testimony on redirect examination distinguishes this case from the *Dickinson-Triplett-Ward-Long* line of cases. The defense had cross-examined both Paul and Saviagno regarding Paul's failure to inform the detective, at least in his initial interview, of all the details of the first sexual assault. The Commonwealth was entitled to have Saviagno explain the interview process in order that the jury could fairly evaluate Paul's initial omission. Compare *Kelley* v. *Boston*, 296 Mass. 463, 465-466 (1937)(one witness allowed to testify as to reason for another witness's omission). By itself, Saviagno's testimony that in "most cases" individuals remember more details at successive interviews was not a comment on Paul's credibility. At no time did he state that in his experience an individual, complaining of a sexual assault, becomes more truthful as the interviews proceed or that he thought Paul was truthful, despite the omission, because he fit the mold of "most cases." Further, the judge's prompt instruction to the jury that it is for the fact finder to determine whether an allegation of sexual assault is true (see n.4), removed any possibility of error.

In sum, the record shows that Saviagno did not comment on Paul's credibility or testify to any opinions. In the circumstances, his testimony on redirect examination was proper.

2. *The introduction of the "fresh complaint concept" into the trial.* At the close of the Commonwealth's evidence, the judge instructed the jury, over the defendant's objection, that

---

[4]Saviagno's repeated use of the word "victims" to describe those individuals was unfortunate. The judge, however, put the word in proper perspective for the jury. During defense counsel's recross-examination of Saviagno, the judge told the jury that the status of an individual complaining to the witness of sexual assaults was that of "[a]lleged victim, . . . I think that is safe to say, it is an alleged victim . . . . A person is not proved to be a victim at that point in the investigation [the interview process], obviously."

A moment later the judge informed the jury that "whether an allegation [of sexual assault] is true or false is for a finder of fact when it is prosecuted."

the testimony in which the "alleged victim . . . told Sergeant Saviagno what happened . . . . That kind of evidence is what we call 'fresh complaint evidence,' and it has a limited purpose . . . ." The judge then stated that fresh complaint evidence "is to corroborate the fact that he told somebody at some time about it. It doesn't establish that the crime actually happened. It only establishes and corroborates that he told somebody that the incident happened." In his final instructions, the judge again stated that the fresh complaint evidence could only be used to corroborate that Paul had complained to the police about the incidents.

The defendant contends in his brief that the judge committed error when he "interjected the concept of 'fresh complaint' into . . . [the] case" because Paul's statements to the police were too remote, as matter of law, to be considered fresh complaints. He further argues that, even if the evidence had been properly admitted on other grounds, it was error for the judge to characterize such evidence to the jury as fresh complaint.

The claim of defense counsel on appeal (he was also trial counsel) that the details of Paul's statements to Saviagno concerning the incidents were not admissible is surprising in view of what occurred at trial. It was defense counsel, not the prosecutor, who brought out such evidence. Obviously, it was a tactical decision on his part in order to expose possible inconsistencies with Paul's testimony. "In such circumstances, when a statement is used by the defendant to discredit the victim during . . . cross-examination, it may be admissible on more traditional principles without regard to the limitations that govern fresh complaint testimony." *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 631 (1987). Such is the case here.

Because four years elapsed between the time of the incidents and Paul's report to the police, the judge should not have instructed the jury on the doctrine of fresh complaint. Compare *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. at 625-626 & n.7 (twenty-one year old victim's delay of three weeks approaches the outer extreme of admissibility). See

also *Commonwealth* v. *Coull*, 20 Mass. App. Ct. 955, 957 n.4 (1985)("[t]estimony as to the victim's substantive conversations three years after the events in question could not have been admitted as fresh complaint . . ."). Moreover, there were no special circumstances in this case justifying an extraordinary delay. Paul was fifteen years old at the time of the alleged incidents; he lived with his family; he had virtually no contact with the defendant after the alleged incidents; and, although the defendant later became a police officer in Cambridge, three or four of Paul's relatives were also on the force.

The defendant, however, fails to point out any prejudice that may have resulted from the giving of the instruction. The jury were informed that testimony concerning the details of Paul's complaints to Saviagno could be considered only for the limited purpose of corroboration of "the fact that the victim told somebody at sometime about [the incidents] . . . ." The jury were specifically informed, more than once, that they could not use the testimony as evidence that the incidents had actually taken place. "We are unwilling to assume that the jury did not heed these instructions." *Commonwealth* v. *Dockham*, 405 Mass. 618, 627 (1989). Further, a reading of the entire charge demonstrates that the fresh complaint instruction did not undercut the judge's careful and complete instructions on prior inconsistent statements and their effect on credibility.

3. *The admission of testimony concerning prior bad acts of the defendant.* On direct examination, the prosecutor asked Paul, over the defendant's objection, "Why did you finally tell . . . [Saviagno] after all that time?" Paul responded, "because I had found out that it was still going on —." The defendant, at sidebar, asked for a mistrial or at least that the answer be struck. He claimed that the question and answer alerted the jury to allegations that the defendant had been having sexual relations with other boys and that such evidence was unfairly prejudicial. The judge allowed the question and answer because he stated they were relevant to

Paul's state of mind in coming forward with his complaint. He denied the defendant's requests.

The Commonwealth argues, in its brief, that the question was proper because "evidence of the reason for a delayed report of a rape and the circumstances of the report have long been held admissible," and cites *Commonwealth* v. *Rollo*, 203 Mass. 354, 355 (1909); *Commonwealth* v. *Colangelo*, 256 Mass. 165, 166 (1926); *Glover* v. *Callahan*, 299 Mass. 55, 57-58 (1937), as support for its argument.

The reliance by the Commonwealth on those decisions is misplaced. They hold that a victim of rape may offer evidence that explains the reason that an earlier complaint was not made. However, they are not concerned with the subject of the question under scrutiny here, i.e., why a delayed complaint was being made at a particular time.

We agree with the defendant that the question was improper, at least on direct examination.[5] Paul's "state of mind" in reporting the incidents about four years after they occurred was not relevant, at least on direct examination. Therefore, it was error, in the circumstances, to allow the question.

We believe that the interrupted answer of the witness does not require a new trial. The information conveyed in the answer was only stated once, in response to a single question. It was never mentioned again to the jurors. In addition, we note that the answer was ambiguous and well might have left some question in the jurors' minds as to whether what "was still going on" was similar conduct.

4. *Remaining issues.* The last two issues do not require detailed discussion. The defendant claims that the judge committed error when he ruled that, if the defendant presented evidence of his good reputation for truthfulness, then the prosecutor would be permitted to cross-examine the witnesses by asking them if they had heard specific allega-

---

[5]In view of our decision that the error was not prejudicial, we need not decide whether the question could properly have been asked on redirect examination, in light of the cross-examination of Paul. See *Commonwealth* v. *Errington*, 390 Mass. 875, 879-881 (1984).

tions of other misconduct by the defendant. The short answer to the defendant's claim is that the judge did not make the ruling described in the defendant's brief. Further, the defendant's reputation for truthfulness was not attacked at trial. Therefore, he would not have been entitled, in any event, to present evidence of his truthful nature. See *Commonwealth* v. *Sheline*, 391 Mass. 279, 288-289(1984) (introduction of testimony that contradicts the testimony of a defendant does not constitute an attack on the defendant's character for truthfulness).

The indictments described the date of the offenses as "between January and April, 1981." The defendant argues that the indictments should have been dismissed because they were insufficiently specific. The indictments meet the test of describing the offenses "with as much certainty as the known circumstances of the case would permit." *Commonwealth* v. *Burke*, 339 Mass. 521, 523 (1959). There is nothing in the record to indicate that a more specific date could have been calculated. Further, the defendant does not present facts that demonstrate he was prejudiced in his ability to present an alibi defense. He admitted driving Boy Scouts home from meetings and letting them steer his automobile. He conceded that Paul had been in his apartment, though he claimed never alone. He presented no evidence of lack of access to the victim. Rather, his defense was to deny the charges and do his best to impeach the victim's credibility. There was no error in the denial of the defendant's motion to dismiss the indictments.

*Judgments affirmed.*