COMMONWEALTH vs. JOSEPH MONTANINO.

Middlesex. October 2, 1990. - March 11, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Criminal,* Indictment. *Unnatural Sexual Intercourse. Evidence,* Opinion, Fresh complaint, Prior misconduct.

At the trial of two indictments for unnatural sexual intercourse with a child under sixteen, the judge incorrectly allowed a police witness to give an opinion regarding sexual assault victims that had the effect of bolstering the victim's credibility. [502-505]

At the trial of two indictments for unnatural sexual intercourse with a child under sixteen, the judge incorrectly admitted in evidence highly prejudicial testimony regarding other sexual misconduct by the defendant that was not otherwise admissible for any relevant purpose. [505-507]

At the trial of two indictments for unnatural sexual intercourse with a child under sixteen, the judge incorrectly admitted evidence of the victim's complaint as fresh complaint testimony, where the circumstances, while justifying some delay, did not rise to the level to allow the introduction of a complaint delayed by four years. [507-510]

At the trial of two indictments for unnatural sexual intercourse with a child under sixteen, the judge did not properly instruct the jury with regard to its consideration of fresh complaint testimony. [510-511]

At the retrial of indictments for unnatural sexual intercourse with a child under sixteen, the issue whether the indictments were sufficiently particular with respect to the dates of the crimes alleged to allow the defendant to present an adequate defense, if raised, was to be considered by the trial judge. [511-513]

INDICTMENTS found and returned in the Superior Court Department on May 31, 1985.

The cases were tried before *James D. McDaniel,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Henry P. Sorett* for the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the Commonwealth.

LIACOS, C.J. On April 3, 1987, a Middlesex County jury found the defendant, Joseph Montanino, guilty on two indictments charging unnatural sexual intercourse with a fifteen year old male youth. The Appeals Court affirmed the convictions. *Commonwealth* v. *Montanino,* 28 Mass. App. Ct. 516 (1990). We granted the defendant's application for further appellate review. For the reasons stated below, we reverse.

We present a brief summary of the factual background of this case.[1] On May 31, 1985, a Middlesex County grand jury returned two indictments against the defendant, charging him with engaging in unnatural sexual intercourse with a child under sixteen on two occasions between January and April, 1981.[2] See G. L. c. 265, § 23 (1988 ed.). At trial, the alleged victim, to whom we shall refer as "Paul," testified that both incidents occurred while he was a member of a Boy Scout troop of which the defendant was the scoutmaster. There were no other eyewitnesses to the incidents. Paul testified that he did not report these incidents to anyone until four years later when, in the spring of 1985, he met with Sgt. Leonard Saviagno of the Cambridge police department and "told him everything." The defendant testified and acknowledged that he had been Paul's scoutmaster, but denied that any sexual activity had ever occurred.

On appeal, the defendant challenges: (1) Sgt. Saviagno's testimony as to his "opinion" that Paul was credible; (2) the prosecution's presentation of unrelated, but similar, "bad

---

[1]A more extensive description of the evidence presented to the jury may be found in *Commonwealth* v. *Montanino,* 28 Mass. App. Ct. 516 (1990).

[2]Two additional indictments were returned against the defendant on that same date, charging him with indecent assault and battery on two male youths, eleven and thirteen years old. The trial on these indictments was severed from the trial on the rape indictments. The defendant was acquitted on one indecent assault and battery indictment and found guilty on the other. The defendant's conviction was affirmed on appeal. *Commonwealth* v. *Montanino,* 27 Mass. App. Ct. 130 (1989). We denied the defendant's application for further appellate review. Our opinion today has no effect on the defendant's indecent assault and battery conviction.

acts" of the defendant; (3) the trial judge's sua sponte intro-
duction of the concept of "fresh complaint" testimony to the
jury; and (4) the trial judge's failure to dismiss the indict-
ments against the defendant due to a lack of specificity. We
address only issues which involve prejudicial error or are apt
to recur on retrial.

1. *Sgt. Saviagno's "opinion" testimony.* The prosecution
called Sgt. Saviagno. Saviagno testified that he met with
Paul three or four times during the spring of 1985 and dis-
cussed "some incidents involving the defendant." Saviagno
testified also that as a result of his conversations with Paul
"some charges were brought against the defendant."

During cross-examination by defense counsel, Saviagno
admitted that there were several inconsistencies between
Paul's trial testimony and the comments Paul had made to
Saviagno in describing the first incident with the defendant.
Paul had stated that the first incident with the defendant oc-
curred as early as January, 1980, while at trial he stated that
the incidents occurred between January and April, 1981.
Paul had told Saviagno that the first incident consisted of the
defendant fondling Paul's genitals, but at trial Paul testified
that the defendant had engaged in oral sex with him during
the first incident.

On redirect examination, Saviagno was allowed to testify
over the defendant's objection that he was the commanding
officer of the Cambridge police department sexual assault
unit, and that he had investigated approximately 300 cases
involving sexual assault. Saviagno described the process by
which he interviewed victims of sexual assault. The prosecu-
tor then asked Saviagno, "And, would you tell us, Sergeant,
whether or not you have an opinion as to whether in your
initial discussions with victims, tend to get more or less than
the complete details that you eventually learn regarding the
incident?" In the ensuing colloquy, which is reproduced in
the margin, Saviagno testified that over the course of his in-
terviews with sexual assault victims, "most" victims eventu-

ally provided more details regarding the assault than they initially revealed.[3]

---

[3]The colloquy bears repeating at length:

THE PROSECUTOR: "And, would you tell us, Sergeant, whether or not you have an opinion as to whether in your initial discussions with victims, tend to get more or less than the complete details that you eventually learn regarding the incident?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "I'll allow that."

" . . .

THE WITNESS: "Yes."

THE PROSECUTOR: "And, would you tell us what that opinion is, Sergeant."

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled. He may elaborate."

THE WITNESS: "The first, usually the first meeting with the victim is a process of laying the groundwork for an interview, which is just to meet the victim, gain the victim's confidence, to reaffirm the victim that we are there to be supportive, and that the information we get is going to have to be reported and passed on to the District Attorney. And get the person comfortable as to what the process is, the court process, supportive processes, psychological supports, and let the victim know exactly what they are going to have to contend with in the course of the prosecution of the case."

THE PROSECUTOR: "What happens over the course of those interviews, Sergeant, with respect to the details of the interview?"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Well, just in a general way, obviously, I'll allow it."

THE WITNESS: "That, again, it depends on the demeanor of the victim and on the mental state of the victim. The first time you talk with a victim, they might just tell you exactly what happened, go into detail, if they feel comfortable talking to you. You might not even interview the victim. You must just get the probable cause for a complaint, and have victim-witness advocates or medical personnel interview the victim, in conjunction with the prosecution of the case. I've had cases where I haven't been able to —"

DEFENSE COUNSEL: "Objection."

THE JUDGE: "No, I don't want to get too particularized. I just told you, you could answer it in a general way."

THE WITNESS: "I'm sorry, your Honor."

THE PROSECUTOR: "Sergeant, have you had cases where, over the course of your interviews with the victim, they provide you with further details of the incident they initially described to you?"

DEFENSE COUNSEL: "Objection."

THE WITNESS: "Well, in most cases —"

THE JUDGE: "No. I will allow that, she may have it."

THE WITNESS: "In most cases, that is true; yes."

The defendant claims that this testimony should not have been permitted because it allowed Saviagno to present to the jury his opinion that Paul was credible on the theory that the irregularities in Paul's statements were consistent with the manner in which truthful victims of sexual assault relate their experiences. "It is a fundamental principle that 'a witness cannot be asked to assess the credibility of his testimony or that of other witnesses.' " *Commonwealth* v. *Triplett*, 398 Mass. 561, 567 (1986), quoting *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706 (1985). "Evaluations of credibility are, of course, within the exclusive province of the trier of fact." *Commonwealth* v. *Ianello*, 401 Mass. 197, 202 (1987), quoting *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978). The Appeals Court concluded, however, that "Saviagno did not give his 'opinion' on Paul's credibility or on any other topic." *Commonwealth* v. *Montanino*, 28 Mass. App. Ct. 516, 521 (1990). However, we believe that the impact on the jury of Saviagno's observations regarding sexual assault victims had the same effect as if Saviagno had directed his comments specifically to Paul's credibility. We think there is little doubt that Saviagno's comments relating to the credibility of "most" sexual assault victims would be taken by the jury as Saviagno's endorsement of Paul's credibility. As we stated in *Commonwealth* v. *Ianello, supra* at 202, "[w]hile the proposed testimony fell short of rendering an opinion on the credibility of the specific [witness] before the court, we see little difference in the final result. It would be unrealistic to allow this type of . . . testimony and then expect the jurors to ignore it when evaluating the credibility of the complaining [witness]."

The opinion testimony of Sgt. Saviagno, be he considered as a lay witness or as an expert witness, violated the long-standing rule that witnesses may not offer their opinions regarding the credibility of another witness. See *Commonwealth* v. *Ianello, supra*; *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 207-208 (1990); P.J. Liacos, Massachusetts Evidence 96 (5th ed. 1981 & Supp. 1985). In light of the fact that Paul, the alleged victim, was the key prosecu-

tion witness in this case, his credibility was a crucial issue. The improper use of Sgt. Saviagno's opinion testimony to bolster Paul's credibility was error requiring reversal.

2. *"Bad acts" testimony.* The prosecution called Paul as its first witness. During direct examination, the prosecutor elicited testimony that approximately four years had passed between the alleged incidents and Paul's report of the incidents to Sgt. Saviagno. The prosecutor then asked Paul: "Why did you finally tell [Sgt. Saviagno] after all that time?" Defense counsel's objection to the question was overruled. Paul answered: "Because I had found out that it was still going on —." Defense counsel immediately objected and asked to be heard at side-bar. Defense counsel moved for a mistrial. The trial judge denied the motion for a mistrial, ruling that the statement was admissible as relevant to Paul's state of mind and as "fresh complaint" testimony. Defense counsel requested, and was denied, an instruction that the jury should disregard Paul's answer.

The defendant argues that the admission of this evidence was improper and highly prejudicial. We agree. "It is well settled that the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admissible if relevant for some other purpose. . . . Such evidence can be highly prejudicial to the defendant, and therefore must be excluded unless it comes within one of the permitted uses, such as to show a common scheme, pattern of operation, absence of accident or mistake, identity, intent, or motive." (Citations omitted.) *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). See *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989); *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985); *Commonwealth* v. *Welcome*, 348 Mass 68, 70-71 (1964).

In the present case, the Commonwealth claims that Paul's testimony was relevant to Paul's state of mind at the time he reported the incidents to Saviagno. We have upheld previously the admission of evidence of a defendant's prior sexual

misconduct as relevant to the state of mind of a sexual assault victim. In *Commonwealth* v. *Errington*, 390 Mass. 875 (1984), a child sexual assault victim testified that she decided to report the defendant's sexual misconduct when she learned that the defendant had been sexually molesting another young girl. The testimony arose on cross-examination by defense counsel, and followed questioning by defense counsel which "seriously challenged" the credibility of the victim. *Id.* at 880. We recognized the "inflammatory nature" of such testimony, but in light of the prosecution's "serious need for [the] evidence to rehabilitate its witness," and the fact that the need for the testimony was created by defense counsel's cross-examination, we upheld its admission. *Id.*

In the present case, by contrast, Paul's testimony regarding other sexual misconduct by the defendant occurred during direct examination in response to questioning by the prosecutor. At the time this testimony was given no evidence had been presented to impeach Paul's credibility; the prosecution had no need to rehabilitate its witness. See *Commonwealth* v. *Triplett*, *supra* at 563 (prosecution's argument that evidence of prior misconduct was necessary to disprove defendant's testimony is without merit when such evidence was offered prior to defendant's testimony).

The admission of Paul's statement "diverts the attention of the jury from the [crime] immediately before it; and by showing the defendant to have been a knave on other occasions, creates a prejudice which may cause injustice to be done him." *Commonwealth* v. *Trapp*, *supra* at 206, quoting *Commonwealth* v. *Jackson*, 132 Mass. 16, 20-21 (1882).[4]

---

[4]The Appeals Court, while ruling that the admission of Paul's statement was improper, concluded that the defendant's case was not so irreparably harmed as to require a new trial. *Commonwealth* v. *Montanino*, 28 Mass. App. Ct. 516, 525 (1990). In support of this conclusion, the Appeals Court noted that Paul's answer was stated only once, was not mentioned again to the jury, and was ambiguous in that it "might have left some question in the jurors' minds as to whether what 'was still going on' was similar conduct." *Id.*

We are not so confident that Paul's comment did not seriously impair the defendant's case. In light of Paul's previous testimony that the defend-

The circumstances which permitted the admission of the defendant's prior sexual misconduct in *Commonwealth v. Errington, supra,* are not found in the present case. The testimony should not have been admitted.[5]

3. *Fresh complaint.* During the prosecution's case-in-chief, both Paul and Saviagno testified regarding certain details of Paul's interviews with Saviagno in 1985. At the conclusion of the prosecution's presentation of evidence, the judge instructed the jury that the testimony concerning Paul's complaint to Sgt. Saviagno was "fresh complaint evidence" that could be used solely to corroborate Paul's claims that he told Saviagno of the incidents with the defendant. The judge also instructed the jury that "at some point, it will be necessary for you to determine whether or not [the complaint] was too remote in time, or other factors that I will discuss with you later, ought to be considered in determining what weight you wish to give to that particular testimony. . . . I will tell you more about that at the appropriate time, but I want you to keep that in mind." The defendant objected and requested to be heard at side bar, but the request was denied. In his closing instructions to the jury, the judge repeated his instruction that fresh complaint evidence could only be used to corroborate Paul's claim that he said he was raped, and not as proof of the rape itself, but the judge gave no instructions regarding the jury's duty to determine the "freshness" of the complaint.

---

ant had sexually assaulted him on two occasions and that Paul had reported these incidents to the police, we do not believe that a reasonable juror could have failed to understand Paul's statement, "it was still going on," as referring to anything other than additional sexual misconduct by the defendant. The mere fact that the effect of the statement was not augmented by repetition over the course of the trial says nothing about its initial impact on the jury.

[5]The fact that the defendant chose to reject the offer of the trial judge to insert an appropriate limiting instruction in his closing instructions to the jury does not alter our conclusion. "[E]ven if a proper limiting instruction were to be given, there was a danger that the jury would misuse the evidence to conclude that the defendant had a propensity to commit sexual crimes against children." *Commonwealth v. Errington,* 390 Mass. 875, 881 (1984).

On appeal, the defendant claims that the judge's failure to instruct the jury that it must determine whether Paul's complaint was sufficiently "fresh" was error. The defendant also argues that the trial judge erred in applying the concept of fresh complaint evidence to a complaint made four years after the alleged rape. See *Montanino*, 28 Mass. App. Ct. 516, 523-524 (1990). The Commonwealth responds that, because of Paul's youth and the close relationship which existed between Paul and the defendant when Paul was a Boy Scout, Paul's complaint was sufficiently fresh to be admitted as fresh complaint testimony. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 625-627 (1989) (eleven day old rape complaint sufficiently fresh in light of "exceptional circumstances" of four year old complainant's youth and familial relationship with assailants).

"There is no absolute rule as to the time within which a sexual assault victim must make [his] first complaint for that complaint to be admissible in evidence as a fresh complaint." *Commonwealth* v. *Amirault*, 404 Mass. 221, 228 (1989). The preliminary decision whether a complaint is sufficiently fresh to be presented to the jury lies in the sound discretion of the trial judge and should be made according to whether the complaint was "reasonably prompt" in the particular circumstances of the case. *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 (1982). See *Commonwealth* v. *Amirault*, *supra* at 228; *Commonwealth* v. *King*, 387 Mass. 464, 473 (1982). Consistent with this standard, this court has been willing to recognize that in particular circumstances the time frame in which a complaint reasonably should have been made may be greater than might otherwise be expected. For example, in *Commonwealth* v. *Amirault*, *supra* at 229, we stated that "[c]ourts have not insisted on great promptness for fresh complaints in prosecutions involving child sexual abuse." And, in *Commonwealth* v. *Dockham*, *supra* at 625, we noted that "[t]he time frame is especially flexible in the context of fresh complaints by young, sexually abused children."

In the present case, certain circumstances might justify some delay by Paul in reporting the incidents with the de-

fendant. Paul was an adolescent victim of alleged homosexual rape, and the emotions of embarrassment, confusion, and fear attendant to such an incident reasonably might justify a delay in revealing its occurrence. See *Commonwealth* v. *Gonsalves*, 23 Mass. App. Ct. 184, 186 (1986) ("[i]t is not at all implausible that feelings of humiliation, embarrassment, and violation of privacy might be particularly forceful in a teenage victim of a male homosexual rape and might account for a delay of several weeks in revealing all the details of the rape"). Another factor we have considered in assessing the reasonableness of a delayed complaint is the relationship between the alleged victim and the alleged assailant. See *Commonwealth* v. *Comtois*, 399 Mass. 668, 673-674 (1987). In the present case, the defendant was Paul's scoutmaster and occupied a position of trust in Paul's life while he was involved in scouting.

We believe, however, that the circumstances of the present case, while justifying some period of delay, do not rise to the level required to allow the introduction of a complaint delayed by four years to be admitted as fresh complaint. The defendant was not related to Paul and did not live in the same household as Paul. Cf. *Commonwealth* v. *Comtois*, *supra* at 674 (assailant was related to, and lived in same household with, child sexual assault victims); *Commonwealth* v. *Dockham*, *supra* at 626 (assailant lived in same household with child sexual assault victim). There was no evidence that the defendant had threatened Paul. Cf. *Commonwealth* v. *LeFave*, 407 Mass. 927, 930 (1990) (assailants told child sexual assault victims that "they would be sent away from home or killed by their mothers or that the [assailants] would kill the children's parents" if they reported incidents); *Commonwealth* v. *Comtois*, *supra* at 674 (assailant threatened child sexual assault victim that she would "get in trouble" if she reported incidents); *Commonwealth* v. *King*, 387 Mass. 464, 473 (1982) (assailant threatened child sexual assault victim that if she reported incidents "he would do it to [her younger] sister next"). Furthermore, Paul testified that he left scouting several weeks after the second incident

with the defendant and had no contact with the defendant for several years thereafter. Cf. *Commonwealth* v. *Comtois, supra* at 672 (child sexual assault victims reported incidents two months and one week after leaving defendant's house); *Commonwealth* v. *King, supra* at 473 (child sexual assault victim reported incident one month after living apart from defendant); *Commonwealth* v. *Dockham, supra* at 626 (child assault victim reported incident eleven days after "he was out of the defendants' control"). But see *Commonwealth* v. *LeFave, supra* at 940 (child sexual assault victim reported incident eighteen months after leaving defendants' day care center).[6] Finally, we note that Paul was fifteen years old at the time of the incidents with the defendant; he was not an adult, but he was not a young child. The circumstances of this case do not justify the judge's conclusion that Paul's complaint, given four years after the alleged incidents, was "reasonably prompt." The admission of Paul's account as fresh complaint testimony was error.

Additionally, the judge failed to instruct the jury properly regarding its consideration of fresh complaint testimony. Although a trial judge has a responsibility to make a preliminary determination whether a complaint is sufficiently fresh to be offered as fresh complaint testimony, *Commonwealth* v. *McGrath*, 364 Mass. 243, 247 (1973), the ultimate responsibility for determining the freshness of the complaint lies with the jury. See *Commonwealth* v. *Dockham, supra* at 625-627; *Commonwealth* v. *Amirault, supra* at 228-230; *Commonwealth* v. *Sherry*, 386 Mass. 682, 690-691 (1982); *Commonwealth* v. *Cleary*, 172 Mass. 175, 177 (1898). Before a jury may be allowed to treat fresh complaint testimony as corroborative evidence, it must determine first that the complaint was sufficiently fresh. In order for a jury to undertake this determination, the jurors must be apprised by the trial judge

---

[6]In *Commonwealth* v. *LeFave, supra* at 940-941, we allowed the admission of a complaint delayed by eighteen months as fresh complaint. However, in that case, the defendant limited her argument on appeal to the issue whether the victim's initial complaint corroborated the victim's allegations and did not challenge the freshness of the complaint. *Id.*

of their proper role in this regard. See *Commonwealth* v. *Dockham*, *supra* at 627 ("[trial judge] instructed the jury to disregard any fresh complaint testimony they found was not in fact a fresh complaint"); *Commonwealth* v. *Amirault*, *supra* at 230 ("the judge submitted to the jury the question whether the complaint was 'fresh' "). In the present case the judge's instructions, while correct as to the appropriate use of fresh complaint testimony, failed to notify the jurors of their duty to determine whether, "in the particular circumstances of the case," Paul's complaint was fresh. *Commonwealth* v. *Amirault*, *supra* at 228. The trial judge's instruction, early in the course of the trial, that, "at some point, it will be necessary for you to determine whether [Paul's complaint] was too remote in time," when considered in light of his subsequent comment that "I will tell you more about [the freshness issue] at the appropriate time," cannot reasonably be said to have instructed the jury adequately. The judge made no mention of the freshness issue in his closing instructions to the jury. This was error. In view of our conclusions in parts 1 and 2, *supra*, we need not determine whether the error was prejudicial.

4. *The specificity of the indictments.* The two indictments in this case allege the date of the offenses as between January and April, 1981. Prior to trial, the defendant moved for a bill of particulars, which also described the date of the offenses as between January and April, 1981. The defendant filed a motion to dismiss the indictments, due in part to a lack of specificity as to the dates of the alleged offenses. This motion was denied.

On appeal, the defendant claims that the Commonwealth's failure to provide a more specific range of dates in the indictments deprived him of his right to be fully informed of the charges against him. In this manner, he claims, he was obstructed in his efforts to present an adequate defense because he was forced to rely solely on a general denial and could not effectively raise an alibi defense.

To the extent the defendant's argument regarding the particularity of the indictments against him is based on statu-

tory considerations, it is without merit. "The time of the offense is not an element of [the crime of rape of a child] and need not be precisely alleged." *Commonwealth* v. *King, supra* at 467. See G. L. c. 277, § 20 (1988 ed.) ("The time and place of the commission of the crime need not be alleged unless it is an essential element thereof"). To the extent the defendant's argument against the indictments relies on due process concerns, however, it is more troubling. "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defence . . . . A crime is made up of acts and intent; and these must be set forth in the indictment, *with reasonable particularity of time, place, and circumstances*" (emphasis added). *United States* v. *Cruikshank,* 92 U.S. 542, 558 (1875). See *People* v. *Morris,* 61 N.Y.2d 290, 295 (1984) ("The determination of whether sufficient specificity to adequately prepare a defense has been provided to a defendant by the indictment and the bill of particulars must be made on an ad hoc basis by considering all relevant circumstances"); *Kogan* v. *People,* 756 P.2d 945, 953 (Colo. 1988) ("[if] information about the time when the alleged crime was committed is necessary to enable the defendant to prepare his defense . . ., such information must be provided").

The defendant suggests that consideration of all the relevant circumstances in the present case compels the conclusion that the Commonwealth should have been required to obtain a more specific time frame from Paul before bringing the indictments against the defendant. In support of his argument, the defendant claims that the evidence presented at trial demonstrates that, at the time of the alleged incidents, Paul was a relatively mature teenager who lived with his own family and held a steady job, and that he could be expected to note the dates of the alleged incidents with greater specificity than was evident from the indictments. The Commonwealth, by way of response, argues that the present case falls under the rubric of prior cases in which this court and the Appeals Court have allowed relatively imprecise dates in indictments for the sexual molestation of young victims. See,

e.g., *Commonwealth* v. *King, supra* at 468-469; *Commonwealth* v. *Montanino*, 27 Mass. App. Ct. 130, 140 (1989); *Commonwealth* v. *Atkinson*, 15 Mass. App. Ct. 200, 203 (1983); *Commonwealth* v. *Vernazzarro*, 10 Mass. App. Ct. 897, 898 (1980).

We believe it inappropriate to determine at this time whether the indictments were sufficiently particular with respect to the dates of the crimes alleged. During his testimony, Paul provided additional information regarding the dates of the alleged incidents. Because we are remanding this case for a new trial, the defendant will be able to utilize this new information in preparing his defense. We think it best to leave the issue, should it be raised again, to the sound discretion of the trial judge.

5. *Conclusion.* For the reasons stated we conclude that prejudicial error infected the trial. Accordingly, the judgments are reversed, the verdicts are set aside, and the case is remanded for a new trial.

*So ordered.*