NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11554

COMMONWEALTH  vs. KEVIN QUINN.


Essex.     May 6, 2014. - September 11, 2014.

Present:  Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.


Rape. Practice, Criminal, Cross-examination by prosecutor.
     Evidence, Cross-examination, Expert opinion, Communication
     with social worker, Relevancy and materiality. Rape-Shield
     Statute. Witness, Expert.



     Indictments found and returned in the Superior Court
Department on August 29, 2007.

     The cases were tried before Leila R. Kern, J.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Eric S. Brandt, Committee for Public Counsel Services, for
the defendant.
     Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.


     GANTS, J.  This case requires us to examine the line that

separates permissible expert testimony regarding the behavioral

characteristics of sexually abused children from impermissible

expert testimony that implicitly vouches for the credibility of the victim witness.  Because we conclude that the prosecutor in this case, over objection, elicited expert testimony during cross-examination of the victim's therapist that crossed that line, and because we conclude that the error was prejudicial, we vacate the defendant's convictions and remand for a new trial.

Background.  A Superior Court jury convicted the defendant on one indictment alleging forcible rape of a child under sixteen years of age and two indictments alleging indecent assault and battery of a child under the age of fourteen.[1,2]  The Appeals Court affirmed the convictions.  Commonwealth v. Quinn, 83 Mass. App. Ct. 759 (2013).  We granted the defendant's application for further appellate review.

We summarize the evidence presented at trial.  The defendant, the boy friend of the victim's mother, lived with the victim and her mother for approximately ten years from July,

---

[1] This was the second trial of the defendant on these indictments.  The defendant's first trial ended in a mistrial when the jury remained deadlocked after three days of deliberations.

[2] The defendant was sentenced to from fifteen years to fifteen years and one day for the forcible rape conviction.  He was sentenced on one indecent assault and battery conviction to from eight years to eight years and one day, to commence on and after the completion of the rape sentence.  This sentence was reduced by the Appellate Division of the Superior Court to a consecutive term of from three years to five years.  The defendant was sentenced to a five-year term of probation on the other indecent assault and battery conviction.

1997, to June, 2006.  The victim testified that, in a short period of time after her seventh birthday in September, 1997, the defendant sexually abused her on three occasions.  The incidents occurred in largely the same way:  when her mother was not home in the evening, the defendant entered the victim's playroom, grabbed her and reached under her nightgown and underwear, touched her chest, put his hands "all over [her] body," and inserted his finger into her vagina.  In the last of these incidents, the defendant forced her hand onto his penis and moved it up and down.  She told the defendant that she was "going to tell [her] mom," and the defendant told her that, if she did, he would kill her and her mother.  The defendant did not attempt to sexually abuse her again.

On July 22, 2004, the victim's mother saw that the victim, who was thirteen at the time, had been cutting her wrists.[3]  The victim's pediatrician advised the victim's mother to take her to the hospital, and, on their way there, the victim and her mother stopped at the defendant's workplace at his request.  The defendant came out to the automobile and began yelling at the victim.  According to the victim's testimony, the defendant told her she was "stupid for doing what [she] was doing" and that if she "really wanted to die [she] could do it right" and "cut the

---

[3] The victim testified that she engaged in "cutting" because she "hated [herself] . . .  because of everything that went on with [the defendant]."

other way."  The defendant also warned the victim not "to tell anybody anything bad" at the hospital and that, if she did, she would be "taken away from [her] mom."[4]

The victim did well in school through eighth grade; she received good grades, participated in school activities, and played the flute and guitar.  In the middle of ninth grade, however, she "had problems with other students," especially one girl who threatened her with violence, and she did not like going to school.  The problems grew worse when she began tenth grade in September, 2006, with more classmates threatening and bullying her.  She was anxious, depressed, and overwhelmed by her problems at school, and on October 30, on the referral of her guidance counsellor, she began seeing Grace Ireland, a licensed clinical social worker, approximately once each week. Ireland testified that the victim was grieving the death of a friend, suffered from agoraphobia, and was afraid to go to school and walk in the hallways.

The victim was absent from school for fifty days in her tenth-grade school year; when she was at school, she received assignments from her teachers and a lesson plan, but spent her time shuttling between the principal's office and two guidance counsellors' offices rather than attending classes.  The victim

_____

[4] The prosecutor said she was first informed by the victim's mother of this threat on January 25, 2010, the day after the defendant's first trial ended in a mistrial.

agreed to the characterization that she was "pretty much self-taught."

The victim did not disclose the defendant's sexual abuse to anyone until June 21, 2007, when she was the age of sixteen and had just completed her tenth-grade school year. Her disclosure occurred when she was at the beach with her boy friend. According to the boy friend's first complaint testimony, he revealed to her that he had been physically abused by his father. When he noticed that she looked upset, he asked her if "anything happened in her life." She said "no" but continued to look upset, so he "asked her a few more times." Eventually she confided to him that she had been raped as a child by the defendant. She began to cry so "hysterical[ly]" that an elderly couple sitting nearby asked if she had been kidnapped. When he asked her what had happened, she explained that the defendant used to pick her up from school and bring her home because her mother was working, and he would rape her then. The victim told him not to tell anybody, but he told her mother of the reported abuse. The mother promptly informed Ireland of the abuse, and made an appointment for the victim to see her the following day. During that session, the victim told Ireland of the abuse for the first time; the victim had specifically denied that she had been sexually or physically abused when asked by Ireland at the

initial intake session on October 30, 2006, and had not spoken of sexual or physical abuse in any subsequent therapy session.

Discussion. The defendant presents two claims of error on appeal. First, he argues that the judge erred in allowing the prosecutor on cross-examination to elicit expert testimony from Ireland that both explicitly and implicitly vouched for the victim's credibility regarding her allegations of sexual abuse. Second, he contends that the judge erred in barring him from offering evidence that the victim was pregnant at the time she made her first complaint.

1. Expert testimony. Ireland's direct examination was limited to her treatment of the victim:  the nature of the problems she was addressing with the victim in therapy, what the victim said to her during therapy, and what the victim did not speak of until June 22, 2007, that is, sexual abuse. She did not offer any testimony regarding the behavioral characteristics of child sexual abuse victims. On cross-examination, the prosecutor transformed her into an expert witness after eliciting evidence that she had seventeen years of experience as a licensed clinical social worker treating patients who were traumatized by physical and sexual abuse, and who struggled with anxiety and depression. The prosecutor also elicited from her that, as part of her training, she learned to recognize "malingering," which she characterized as feigning "some kind of

illness," whether physical or mental, to obtain some benefit, such as a day off from work where one calls in sick.  The prosecutor then asked Ireland whether she found that the victim was "faking it or malingering any of her symptoms," and Ireland answered, "No."[5]  Defense counsel did not object to this line of questioning.

The prosecutor next asked Ireland to describe the victim's "demeanor" when Ireland began treating her.  Ireland stated "[The victim] was very shut down . . . [and] very quiet. . . . It was very hard to get her to say more than yes or no.  She was very upset.  She cried frequently. . . .  She had difficulty eating. . . .  She was afraid to be anywhere.  She's very, very depressed.  She couldn't sleep."

---

[5] The exchange between Grace Ireland and the prosecutor on the subject of malingering was as follows:

The prosecutor:  "When you had an opportunity to meet with [the victim] on October 30, 2006, part of what you would do, based on the fact that she had missed a week of school and you were going to write a note, is you'd make an evaluation of whether or not she was faking; is that right?"

The witness:  "Yes."

The prosecutor:  "And did you at any point find that she was faking it or malingering any of her symptoms?"

The witness:  "No."

The prosecutor later asked Ireland to "describe generally some of the symptoms that [she had seen] in . . . teenagers who have been sexually abused as children."  Ireland testified:

> "[T]his applies to adults and to teenagers. . . .  [T]here are people [who] are very, very anxious.  They have a lot of . . . significant anxieties, significant depression, sleep impairment.  A lot of times they're very shut down.  Most of the time they're very shut down.  Anxiety is so significant that it impairs their ability to function at school or other places.  And sometimes they will actually disassociate . . . .  That would be the worst continuum."

She added that, if a person who is sexually abused as a child does not receive treatment, the person's symptoms "would probably exacerbate over time" and would start to get worse when the person reached puberty. Where depression arises from childhood sexual abuse, "[t]here's usually a report that people will tell you that they can't sleep, that they can't eat, that they can't function, that they . . . feel terrible all the time."  When the prosecutor asked whether she had experience with "sexually abused teenagers" who have physically harmed themselves, Ireland said that teenagers will sometimes "cut," engage in "risky behaviors," and "abuse substances."  This line of questioning occurred over defense counsel's repeated objections.

a. Explicit vouching.  The defendant contends that Ireland explicitly vouched for the victim's credibility when she testified that the victim was not malingering, and that such

testimony should have been excluded. Because the defense did not object to this testimony at trial, our review is limited to whether its admission in evidence created a substantial risk of a miscarriage of justice. Commonwealth v. Shea, 467 Mass. 788, 790-791 (2014).

No witness, neither a lay witness nor an expert, may offer an opinion regarding the credibility of another witness. See Commonwealth v. Montanino, 409 Mass. 500, 504 (1991), citing Commonwealth v. Ianello, 401 Mass. 197, 202 (1987). "Such testimony impermissibly intrudes on the jury's province to assess the credibility of the witness." Commonwealth v. Richardson, 423 Mass. 180, 186 (1996), quoting Commonwealth v. Trowbridge, 419 Mass. 750, 759 (1995). The defendant contends that, by eliciting Ireland's finding that the victim was neither malingering nor faking, the prosecutor essentially had elicited Ireland's opinion that the victim was telling the truth regarding the sexual abuse allegations.

Even if we were to assume that Ireland's opinion was improper, its admission did not create a substantial risk of a miscarriage of justice. Although the prosecutor asked whether Ireland found the victim to be malingering "at any point," a reasonable jury would have understood from the preceding question that the prosecutor meant to ask whether Ireland believed "at any point" during the intake interview that the

victim had faked her symptoms of anxiety and depression in order to avoid going to school during the preceding week. Where the victim had denied in her initial intake interview with Ireland on October 30, 2006, that she had been sexually abused, we doubt that a reasonable jury would have understood Ireland's opinion regarding malingering to mean that Ireland believed the victim was telling the truth regarding the sexual abuse she reported eight months later.

b. Implicit vouching. The defendant next contends that the judge erred by admitting in evidence, over defense counsel's objection, Ireland's testimony regarding the behavioral characteristics of sexual abuse victims because it implicitly vouched for the victim's credibility regarding her sexual abuse allegations.

"[T]estimony on the general behavioral characteristics of sexually abused children may properly be the subject of expert testimony because behavioral and emotional characteristics common to these victims are 'beyond the jury's common knowledge and may aid them in reaching a decision.'" Commonwealth v. Federico, 425 Mass. 844, 847-848 (1997), quoting Commonwealth v. Colin C., 419 Mass. 54, 60 (1994). An expert witness on sexually abused children, however, may not "directly opine on whether the victim was in fact subject to sexual abuse," or directly refer or compare the behavior of the complainant to

general behavioral characteristics of sexually abused children. Federico, supra at 849. See Trowbridge, 419 Mass. at 759. Consequently, an expert may not opine that the child's behavior or experience is consistent with the typical behavior or experience of sexually abused children. Richardson, 423 Mass. at 186. See Trowbridge, supra; Commonwealth v. Brouillard, 40 Mass. App. Ct. 448, 451 (1996).

Even where an expert does not directly compare the behavior of the complainant to that typical of sexually abused children, the expert's testimony may be inadmissible where a reasonable jury would think the expert was implicitly vouching for the credibility of the complainant. See Montanino, 409 Mass. at 504 ("little doubt" that expert's comments regarding credibility of "most" sexual assault victims would be taken by jury as expert's endorsement of complainant's credibility); Ianello, 401 Mass. at 202 ("While the proposed testimony fell short of rendering an opinion on the credibility of the specific child before the court, we see little difference in the final result"; expert's opinion "ultimately would have been applied [by the jury] to the child alleging sexual abuse"). See also Commonwealth v. Perkins, 39 Mass. App. Ct. 577, 583-584 (1995) (expert's testimony based on hypothetical questions that mirrored underlying facts of case was "tantamount to an endorsement of the credibility of the complaining child witness").

"The risk of improper comparisons between any general behavioral characteristics of sexually abused children and a particular complaining child witness is most acute when the expert witness has examined or treated the child." Federico, 425 Mass. at 849. See Commonwealth v. Quincy Q., 434 Mass. 859, 872 (2001), quoting Richardson, 423 Mass. at 186 ("danger of vouching 'is greater where the witness is testifying as both a direct witness and an expert, particularly where the witness offers fresh complaint testimony'"). The risk of implicit vouching, therefore, was especially acute here, where Ireland had been the victim's therapist for nearly eight months and had seen her in therapy between twenty and twenty-five times. See Commonwealth v. Rather, 37 Mass. App. Ct. 140, 148 n.4 (1994) ("where the expert has seen the victim[], refers to [her], and also gives an opinion, the jury may believe that the witness is commenting on the credibility of a particular complainant that he or she has examined"); Commonwealth v. McCaffrey, 36 Mass. App. Ct. 583, 593-594 (1994) (recommending that sexual abuse experts "have no connection with and make no references to the child victim or her family").

"The line between permissible and impermissible opinion testimony in child sexual abuse cases is not easily drawn." Richardson, 423 Mass. at 186. But we conclude that the testimony elicited on cross-examination from Ireland fell well

over the impermissible line, and that it was an abuse of discretion to allow this testimony in evidence.  It would plainly have crossed the line for Ireland to have offered an opinion that the victim's behavior was consistent with that of a teenager who had been sexually abused as a child because, as is common with child sexual abuse victims, she was "very shut down," suffered from significant anxieties and depression, had difficulty eating, sleeping, and functioning at school, and cut herself, and her symptoms grew worse when she reached puberty. But that is precisely what a reasonable jury would have taken Ireland's testimony to mean.  See Brouillard, 40 Mass. App. Ct. at 451 (implicit vouching where testimony "juxtaposed discussion of general syndromes with specific descriptions of and opinions about the complainants"); Rather, 37 Mass. App. Ct. at 148 n.4.

The Commonwealth contends that the cross-examination was permissible because the defense attorney in her direct examination of Ireland elicited evidence that the victim was a troubled girl with emotional problems arising from her peer relationships and her experience in high school, and that it was appropriate to establish "that many of those symptoms that the defense attributed to peer issues were also observed in persons who had been sexually abused."  We recognize that evidence that otherwise may be inadmissible may become admissible where the defendant opens the door to its admission.  See, e.g.,

Commonwealth v. Magraw, 426 Mass. 589, 594 (1998) (murder victim's mental state may become "material issue if the defendant opens the door by claiming," for example, "that the death was a suicide or a result of self-defense").  But a defendant does not open the door so wide as to permit a treating therapist to implicitly vouch for the credibility of a victim's claim of sexual abuse simply by calling that therapist to testify about the victim's symptoms and the victim's description of her problems.[6]  The gist of the evidence elicited here by defense counsel was twofold:  first, the victim was a troubled girl whose testimony may not be reliable, and, second, the sexual abuse allegations were not credible where she did not mention them to her therapist for nearly eight months.  Defense counsel did not elicit evidence from Ireland that the victim's behavior was inconsistent with that of a childhood sexual abuse victim or that implicitly vouched for the victim's lack of credibility regarding her allegations of child sexual abuse.

In Richardson, 423 Mass. at 183, 186, a police officer with extensive experience investigating allegations of sexual abuse was called by the defendant to testify to show that the sequence

_____

[6] The prosecutor could have elicited testimony from Ireland on cross-examination that the victim's anxiety and depression were not solely caused by her problems at school.  The prosecutor also could have called an expert who had not treated the victim to testify regarding the general behavioral characteristics of teenagers who were victims of sexual abuse as children.

of incidents of sexual abuse described by the victim in speaking with the officer contradicted the victim's earlier testimony. On cross-examination, the prosecutor qualified the officer as an expert and elicited the officer's testimony that "it's highly unusual that [child victims] remember dates and times and sequences."  Id. at 182.  Although we held that "any error was not prejudicial," we noted that the testimony was "very close to the line of admissibility."  Id. at 186.  In Rather, 37 Mass. App. Ct. at 143, where the defendant was charged with child sexual abuse, defense counsel called one of the victim's therapists to elicit testimony that the victim had denied being anally assaulted and had not reported being burned by the defendant.  On cross-examination, the prosecutor qualified the therapist as an expert and elicited opinion testimony that victims of sexual abuse who are under the age of ten and who have been threatened generally do not disclose their sexual abuse and, when they do, they disclose it in stages over a long period of time.  Id. at 144.  The Appeals Court concluded that "the jury could reasonably have concluded that the witness had implicitly rendered an opinion as to the general truthfulness of the victims," and that the cross-examination therefore crossed the line into improper testimony.  Id. at 148-149.  If the cross-examination in Richardson came "very close to the line of admissibility," Richardson, supra at 186, and if the cross-

examination in Rather crossed it, the cross-examination here was certainly impermissible where it suggested that the behavioral characteristics of the victim were consistent with those of sexual abuse victims.

Having concluded that the improper admission of the expert's implicit vouching for the credibility of the victim was error, we now consider whether the error was prejudicial.  An error is not prejudicial where it "did not influence the jury, or had but very slight effect."  Commonwealth v. Christian, 430 Mass. 552, 563 (2000), quoting Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).  We cannot be confident in this case that Ireland's implicit vouching did not influence the jury.  The Commonwealth's case rested almost entirely on the credibility of the emotionally troubled victim; apart from the boy friend's first complaint testimony, there was no corroboration of her allegations of sexual abuse.  Where a reasonable jury would have understood the victim's therapist, who had seen the victim regularly for nearly eight months and who had treated many child sexual abuse victims, to have suggested that the victim's behavioral characteristics were consistent with that of a child sexual abuse victim, we cannot say this expert testimony did not influence the jury's evaluation of the victim's credibility.  We therefore vacate the defendant's convictions and remand for a new trial.

2.  Exclusion of evidence of pregnancy.  Because we are vacating the defendant's convictions, we need not dwell on the defendant's second claim of error but address it only because it may arise again on retrial.  After obtaining a medical record that showed that the victim was pregnant in July, 2007, the defendant sought the judge's permission to ask the victim if she was pregnant when she disclosed her sexual abuse on June 21, 2007.  The judge denied the motion, concluding that the risk of unfair prejudice outweighed its probative value, especially in view of the legislative policy reflected in the rape shield statute, G. L. c. 233, § 21B, that declares inadmissible, except under certain circumstances not present here, "[e]vidence of specific instances of a victim's sexual conduct."  See, e.g., Commonwealth v. Herrick, 39 Mass. App. Ct. 291, 295 (1995) (evidence victim became pregnant six months after alleged incident properly excluded as irrelevant where defendant sought to argue victim invented rape allegations to hide fact she was sexually active from mother); Commonwealth v. Cross, 33 Mass. App. Ct. 761, 764 (1992) (evidence that male complainant in statutory rape case had thought his girl friend was pregnant properly excluded under rape shield statute).

"We have recognized . . . that where the rape shield statute is in conflict with a defendant's constitutional right to present evidence that might lead the jury to find that a

Commonwealth witness is lying or otherwise unreliable, the statutory prohibition must give way to the constitutional right."  Commonwealth v. Polk, 462 Mass. 23, 37-38 (2012).  The defendant contends that, if the victim were pregnant at the time of her disclosure, she had an additional motive to lie about the defendant's sexual abuse in order to prevent the defendant from returning to her home.[7]  Where there was already abundant evidence that the victim did not want the defendant to return home,[8] the judge did not abuse her discretion in barring evidence of the victim's pregnancy.

Conclusion.  The defendant's convictions are vacated, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

So ordered.

---

[7] In the days leading up to June 21, 2007, when the victim first disclosed the abuse to her boy friend, the defendant had spent an increasing amount of time with the victim's family, and had spent the night at the house once during the week of June 10, and again on June 17.

[8] The victim acknowledged she was "relieved" when the defendant and her mother broke up, and "fearful" that they would get back together.  The defendant had not wanted the victim to date when he lived with her.  In June, 2007, the victim's boy friend was living with her family while his father was serving in the military, but the victim's boy friend testified that he did not believe the defendant had stayed overnight at the victim's house during that time period.