Following a jury trial, the defendant, Christopher Brunet, appeals from his convictions of aggravated rape of a child, assault with the intent to rape a child, indecent assault and battery of a child under the age of fourteen, enticement of a child under the age of sixteen, and dissemination of matter harmful to a minor. We affirm.
Background. When the victim was nine years old, the defendant moved in with the victim's mother. Because the mother had an early work shift, the defendant assumed responsibility for getting the victim and her younger brothers ready to be picked up by the bus for school. Soon thereafter, he began rubbing his penis on the victim's genital area on repeated mornings, once unsuccessfully trying to penetrate her. He told the victim, a recent cancer survivor, that the mother would no longer be able to bring her to cancer treatments if she revealed what he was doing.
After a few weeks of this abuse, the victim experienced severe genital pain during a party at her aunt's home. After her mother asked her what was wrong, she reluctantly disclosed the abuse. The next day, the mother brought the victim to MetroWest Hospital. There, Dr. Susan Mahoney, a pediatric emergency room doctor, examined her and noticed swelling, redness, and abraded skin in the victim's genitalia. Six days later, Dr. Kimberly Schwartz of the University of Massachusetts Memorial Hospital examined the victim and observed superficial abrasions and signs that the injuries observed by Dr. Mahoney had healed.
1. Witness bias. The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights entitle a defendant to cross-examine prosecution witnesses for bias or prejudice. Commonwealth v. Avalos, 454 Mass. 1, 6-7 (2009). A judge may not "bar all inquiry into the subject" if the defendant demonstrates "a possibility" of bias. Commonwealth v. Magadini, 474 Mass. 593, 604 (2016). Nonetheless, a judge retains broad discretion both in "[d]etermining whether the evidence demonstrates bias" and in otherwise imposing reasonable restrictions on cross-examination. Avalos, supra at 7, quoting from Commonwealth v. LaVelle, 414 Mass. 146, 153 (1993). See Commonwealth v. Garcia, 470 Mass. 24, 35 (2014). "A defendant must make a 'plausible showing' of alleged bias, with a factual basis for support"; otherwise, the judge may restrict or entirely exclude the inquiry. Commonwealth v. Sealy, 467 Mass. 617, 624 (2014), quoting from Commonwealth v. Tam Bui, 419 Mass. 392, 401, cert. denied, 515 U.S. 861 (1995). See Commonwealth v. Johnson, 431 Mass. 535, 538 (2000) (affirming exclusion of cross-examination where "the import of the question was too attenuated to create a remote possibility of ... bias"). On appeal, the defendant bears the burden of showing that the judge abused his discretion in restricting cross-examination, Garcia, supra, and must establish that error from the record. Avalos, supra.
The defendant did not meet his burden here. The judge did not bar the defendant from all inquiry into his theory of bias on cross-examination. Rather, the judge specifically allowed the defendant to question the victim's mother on (1) the prior involvement of the Department of Children and Families (DCF) with her children, including the finding that her children were in need of services; and (2) the difficulty of raising her three children as a single mother. See Avalos, 454 Mass. at 7-8. Contrast Commonwealth v. Elliot, 393 Mass. 824, 826-828, 832 (1985) (reversing on the entire exclusion of witness bias questioning).
The judge acted within his discretion in restricting further questioning given the lack of supporting evidence. The defendant's theory rested on incidents with DCF that occurred over two years prior to the allegations. There was no ongoing DCF involvement when the instant allegations were brought, and no evidence suggested further involvement by DCF was likely to occur. In particular, there was no evidence that the victim's mother ever feared, or had any reason to fear, losing custody of her children.
In this regard, the defendant's reliance on Commonwealth v. Kowalski, 33 Mass. App. Ct. 49 (1992), is misplaced. There, the victim specifically testified that her boy friend had beaten her, providing a plausible basis to demonstrate her existing fear of the boy friend as the motive for fabricating rape charges. Id. at 51-52. The judge could find that the defendant's theory in this case was not similarly plausible. The record fails to establish a logical connection between the discovery of the victim's physical condition and an immediate need for the mother to fabricate rape charges to avoid losing custody of her children. The defendant's theory that the mother, acting on a remote, unprompted fear, would take the drastic step of accusing the defendant of such a horrific crime fell into the realm of speculation. The judge did not err, accordingly, by restricting the defendant's inquiry on the subject.
2. Vouching by expert witnesses. A judge has "broad discretion with respect to the admissibility of expert testimony," Commonwealth v. Morris, 82 Mass. App. Ct. 427, 431 (2012), quoting from Commonwealth v. Mamay, 407 Mass. 412, 421 (1990), and the "decision to admit expert testimony is subject to review only for abuse of discretion." Commonwealth v. Roderiques, 462 Mass. 415, 428 (2012). Although the defendant failed to properly object to some of the challenged testimony in this case, for simplicity's sake we review all of the claimed errors as if preserved, as they are without merit.
Testimony is inadmissible where any witness, including an expert, is asked to assess the credibility of another witness's testimony. Commonwealth v. Quinn, 469 Mass. 641, 646 (2014). Although expert testimony "on the typical symptoms or signs and general behavioral characteristics of sexually abused children is admissible and does not, of itself, constitute an opinion on the credibility of the complaining witness," Commonwealth v. Colon, 49 Mass. App. Ct. 289, 291 (2000), an expert "may not 'directly opine on whether the victim was in fact subject to sexual abuse,' or directly refer or compare the behavior of the complainant to general behavioral characteristics of sexually abused children." Quinn, supra at 647, quoting from Commonwealth v. Federico, 425 Mass. 844, 849 (1997). Even without direct comparison, expert testimony "may be inadmissible where a reasonable jury would think the expert was implicitly vouching for the credibility of the complainant." Quinn, supra. Where, however, the expert testimony is "appropriately generalized," Morris, 82 Mass. App. Ct. at 434, or concerns "physical signs of sexual abuse," instead of comparative "patterns of disclosure" by sexual abuse victims, it is admissible. Colon, 49 Mass. App. Ct. at 292. See Commonwealth v. Colon, 64 Mass. App. Ct. 303, 312 (2005) (expert may testify that injuries are " 'consistent with' penetration").
a. Dr. Schwartz's testimony. The judge properly admitted the testimony of Dr. Schwartz. Regarding her credentials as a board-certified child abuse pediatrician, the testimony properly established her qualifications, see Morris, 82 Mass. App. Ct. at 431, and did not concern, let alone comment on, the victim's credibility. Her testimony on potential causes of the victim's injuries was also admissible. Taking a victim's "history" referred to general medical procedure, not the specific victim. See Morris, supra at 433-434. Commenting that a "roll of carpet" could cause frictional burns provided nothing beyond an alternative, hypothetical interpretation of the victim's physical injuries. See Colon, 49 Mass. App. Ct. at 292-293. Similarly, the statement that "most children won't do things that hurt them intentionally" neither concerned sexual abuse, see ibid., nor referred to specific behavior of sexually abused children, but rather to children in general. See Morris, supra at 433-434. Contrast Quinn, 469 Mass. at 647-648 (testimony by treating therapist about postabuse behavior of abused children constituted implicit vouching under the circumstances). Testimony that "an intact hymen is normal and doesn't mean nothing happened" was also admissible, as it "did no more than give the jury information concerning the medical interpretation of an absence of any physical evidence of penetration; namely, such a finding does not exclude that sexual abuse occurred." Colon, 49 Mass. App. Ct. at 293. See Commonwealth v. Centeno, 87 Mass. App. Ct. 564, 570 (2015) (no error to allow expert testimony "conveying to the jury that it was merely possible the abuse occurred but not that it had occurred").
b. Dr. Mahoney's testimony. The judge also properly admitted the testimony of Dr. Mahoney. First, the mere fact that Dr. Mahoney referred the victim to the University of Massachusetts child protection team did not impermissibly imply that Dr. Mahoney believed the victim's account, given that (1) Dr. Mahoney stated she was not an expert in child sexual assault; (2) her referral came after a medical examination revealed physical injuries; and (3) she clarified that the University of Massachusetts team specialized in "potential child abuse cases" (emphasis supplied). Second, Dr. Mahoney properly opined that the "degree of excoriation" and "atrophic changes" found on the victim exceeded the amount from a "typical child" who itched or scratched herself. This was proper testimony about the significance of the victim's physical condition and was similarly the subject of considerable testimony by the defense expert. See Colon, 49 Mass. App. Ct. at 293.
3. Improper opinion evidence. "Although it is for the court to determine whether a witness is qualified to testify as an expert, there is no requirement that the court specifically make that finding in open court ...." Commonwealth v. Richardson, 423 Mass. 180, 184 (1996), quoting from United States v. Bartley, 855 F.2d 547, 552 (8th Cir. 1988). Rather, "[t]he crucial issue is whether the witness has sufficient education, training, experience, and familiarity with the subject matter of [her] testimony," and the decision "will not be disturbed absent an abuse of discretion." Morris, 82 Mass. App. Ct. at 431, quoting from Commonwealth v. Goetzendanner, 42 Mass. App. Ct. 637, 642 (1997). Given Dr. Mahoney's qualifications and extensive experience as a board-certified, emergency room pediatric doctor, the judge did not err by allowing such opinion testimony from the witness.
4. Ineffective assistance of counsel. To make a successful claim of ineffective assistance of counsel, the defendant "must demonstrate that (1) defense counsel's conduct fell 'measurably below that which might be expected from an ordinary fallible lawyer' ... and (2) he was prejudiced by counsel's conduct in that it 'likely deprived the defendant of an otherwise available, substantial ground of defence.' " Commonwealth v. Lys, 91 Mass. App. Ct. 718, 720 (2017), quoting from Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Although it is a "well-established principle that the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial[,]" Commonwealth v. Zinser, 446 Mass. 807, 810 (2006), we are able to evaluate the defendant's claim that the apparently inadvertent redaction of the victim's medical records deprived the defendant of a substantial ground of defense; it did not.
Under G. L. c. 233, § 79, hospital medical records are exempted from the common-law rule against hearsay where the recorded statement relates "to the treatment and medical history of such cases." Commonwealth v. Cole, 473 Mass. 317, 321 (2015), quoting from c. 233, § 79. The mother's statement in the victim's medical records denying prior involvement with DCF is hearsay, see Commonwealth v. Cassidy, 470 Mass. 201, 216-217 (2014), and does not bear any apparent relationship to the victim's treatment, diagnoses, or medical history. "Thus, without testimony or additional evidence," the mother's statement was not admissible under the hearsay exception provided by § 79. Commonwealth v. Irene, 462 Mass. 600, 616 (2012). Because the admission of the unredacted records would have been in error, the defendant cannot show he was prejudiced by his counsel's conduct. Cf. Commonwealth v. Domino, 465 Mass. 569, 578 (2013) (analyzing claim of prejudice while disregarding "the likelihood of a legal misstep by the judge").
5. Leading questions and other errors. The decision to allow leading questions on direct examination, especially when handling young children, is well within the discretion of the trial judge. See Commonwealth v. Ridge, 455 Mass. 307, 326 (2009) ; Commonwealth v. Federico, 70 Mass. App. Ct. 711, 718 (2007). We discern no error here; the record reveals nothing improper about the questioning, nor in the breaks allowed by the judge. As the victim specifically stated that she was testifying based on her own memory and was subject to cross-examination on what happened during the breaks, there was no indication of unfairness.
Finally, the prosecutor did not misstate the evidence in closing argument. Both the victim and the mother testified that the victim was scared to disclose the defendant's abuse to her mother, but did in fact do so. The prosecutor properly argued that the victim and the mother were consistent on this and was entitled to choose the mother's version of the disclosure for quotation. Commonwealth v. Urrea, 443 Mass. 530, 546 (2005).
Judgments affirmed.