SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. THOMAS MERCADO

 
 Docket:
 SJC-13548
 
 
 Dates:
 September 9, 2024 - May 5, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Homicide. Identification. Evidence, Identification, Expert opinion. Witness, Expert. Practice, Criminal, Capital case, New trial.
 
 

             Indictment found and returned in the Superior Court Department on June 1, 2006.
            Following review by this court, 466 Mass. 141 (2013), a motion for a new trial, filed on November 17, 2022, was heard by Robert B. Gordon, J.
            A request for leave to appeal was allowed by Lowy, J., in the Supreme Judicial Court for the county of Suffolk.
            Amy L. Codagnone for the defendant.
            Arne Hantson, Assistant District Attorney, for the Commonwealth.
            Ira L. Gant & Patrick Levin, Committee for Public Counsel Services, Matthew A. Wasserman, of New York, Radha Natarajan, & Chauncey B. Wood, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.
            BUDD, C.J.  This court previously affirmed Thomas Mercado's conviction of murder in the first degree, together with the denial of his first motion for a new trial after plenary review under G. L. c. 278, § 33E (§ 33E).  See Commonwealth v. Mercado, 466 Mass. 141 (2013).  The defendant subsequently sought, and obtained, leave to appeal from the denial of his second motion for a new trial from a single justice of this court on the sole issue whether the new eyewitness identification science entitled the defendant to a new trial.  For the reasons that follow, we affirm the denial of the second motion.[1] 
            Background.  We present the relevant factual and procedural background as taken from the record, reserving certain details for later discussion. 
            1.  The homicide.[2]  On the night of February 6, 2006, Jeanette Martinez was in her second-floor apartment with Corrin Cripps using cocaine.  Cripps went to the one other apartment on that floor, where Ivan Correia lived, to obtain more.  While there, Cripps observed Correia, along with the victim and the victim's two brothers, Jair Barros and Michael Gomes, at a table packaging cocaine.    
            When Cripps returned to Martinez's apartment, the defendant and "Pelon," Martinez's drug supplier, had arrived.  Shortly thereafter, Correia and Barros visited Martinez's apartment and asked for scissors and baking soda.  After they left, the defendant asked Cripps what the men were doing in the other apartment.  She responded that she did not know, but that she had seen cocaine on the table.  Martinez and Cripps then went into the bedroom and used cocaine for about thirty minutes.  At some point, two men knocked on the door to ask for a razor and baggies, to which the defendant responded, "You ain't getting dick.  Have your momma go buy you some baggies."  Around that same time, Martinez also overheard a conversation between Pelon and the defendant, in which the defendant told Pelon they were going to "kill the guy."    
            Thereafter, Cripps went back and forth between the two apartments multiple times.  When Cripps left Correia's apartment for the last time, the victim, Gomes, and Correia followed her out.  A hooded man, whom Cripps later identified as the defendant, was standing against the wall in the hallway.  After Cripps entered Martinez's apartment and closed the door, she heard gunshots.  When Martinez looked through the peephole of her apartment door, she saw the hooded man, who she later identified as the defendant, shoot someone.  After the shots were fired, Gomes saw the hooded man, whom he identified as the defendant at trial, descend the stairs and run away. 
            The victim suffered six gunshot wounds, including to his neck and abdomen, and died of his injuries.  Mercado, 466 Mass. at 144.  Approximately one year later, police located the defendant in Puerto Rico, where he provided an alias rather than his real name.  At trial, the defendant testified that he went to the apartment building on the evening in question at approximately 9:30 P.M. with Pelon to "see some girls."  At Martinez's apartment, he saw Cripps, whom he knew.  While at the apartment, people came to the door.  The defendant asked Cripps "what these guys are over there [sic] because they keep knocking on the door."  The defendant testified that he left the apartment at approximately 10:30 or 10:45 P.M.  He further testified that soon thereafter he traveled to Puerto Rico to see a girlfriend.  The defendant admitted to using a different name when questioned by police while there, but denied knowing anything about the shooting.
            2.  Posttrial proceedings.  Following the defendant's conviction of murder in the first degree, he filed a motion for a new trial on grounds of ineffective assistance of counsel in connection with the interview that took place in Puerto Rico.  That motion was denied, and an appeal from that denial was consolidated with the direct appeal from his conviction.  Both were affirmed.  See Mercado, 466 Mass. at 155.  
            Several years later, in November 2022, the defendant filed a second motion for a new trial arguing, among other things, that based on newly discovered evidence, the eyewitness identifications of the defendant to which Cripps, Martinez, and Gomes testified at trial were unreliable.[3]  After an evidentiary hearing before a judge who was not the trial judge, the motion was denied.  The defendant subsequently petitioned a single justice of this court, seeking leave to appeal.  See G. L. c. 278, § 33E.[4]  The single justice allowed the defendant's petition on the claim of newly developed scientific testimony on eyewitness identification.[5]  
            Discussion.  A judge, in his or her discretion, "may grant a new trial at any time if it appears that justice may not have been done."  Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001).  See Commonwealth v. Sanchez, 485 Mass. 491, 498 (2020).  To prevail on a motion for a new trial based on new evidence, a defendant must show both that the evidence is newly discovered[6] and that its absence was prejudicial.  See Commonwealth v. Gaines, 494 Mass. 525, 538-539 (2024).  "[T]he motion judge decides not whether the verdict would have been different, but rather whether the new evidence would probably have been a real factor in the jury's deliberations" (citation omitted).  Id. at 540.  
            Here, the judge denied the motion because, although he agreed with the defendant that the eyewitness identification science presented was newly discovered, he determined that it would not have been a real factor in the jury's deliberations.  Generally, this court will examine the motion judge's conclusion only to "determine whether there has been a significant error of law or other abuse of discretion."  Sanchez, 485 Mass. at 498, quoting Commonwealth v. DiBenedetto, 458 Mass. 657, 664 (2011), S.C., 475 Mass. 429 (2016).  Where, as here, the judge held an evidentiary hearing, we afford deference to the motion judge's findings that are "drawn partly or wholly from testimonial evidence" unless clearly erroneous.  Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018).
            1.  Newly discovered evidence.  "Evidence qualifies as newly discovered where it was 'unknown to the defendant or his counsel and not reasonably discoverable by them at the time of trial (or at the time of the presentation of an earlier motion for a new trial).'"  Gaines, 494 Mass. at 538, quoting Commonwealth v. Grace, 397 Mass. 303, 306 (1986).  In concluding that the eyewitness identification research was newly discovered, the judge credited the testimony of Dr. Nancy Franklin, an expert in memory and eyewitness identification.  Franklin testified that there had been a significant expansion of research in the field since the defendant's 2009 trial.  We observed as much in Commonwealth v. Kirkland, 491 Mass. 339, 356-357 (2023), where we acknowledged that even as of 2013 the reliability of eyewitness identifications was not an issue commonly raised at trial.  Moreover, it was not until 2015 that we had a sufficient basis upon which to catalog the advancements in eyewitness identification research and prospectively incorporate it into our own jurisprudence.[7]  See generally Commonwealth v. Gomes, 470 Mass. 352, 367 (2015), S.C., 478 Mass. 1025 (2018).  Given the foregoing, the judge did not abuse his discretion in determining that the eyewitness identification research was newly discovered evidence.
            2.  Prejudice.  To demonstrate prejudice, a defendant must show that the "the [new] evidence would probably have been a real factor in the jury's deliberations, such that its absence casts real doubt on the justice of the conviction" (citation and quotation omitted).  Gaines, 494 Mass. at 539.  Pointing to the fact that Gomes failed to pick the defendant out of a photographic array as the shooter and that Cripps and Martinez both admitted to being high on "crack" cocaine at the time of the shooting, the defendant argues that had the jury been presented with the new research on the reliability (or lack thereof) of eyewitness identifications, they would have reached a different conclusion.  However, as the judge noted, the new research carries relatively little weight when applied to this case.
            First, Franklin's testimony, which focused on research demonstrating the unreliability of stranger eyewitness identification, would have been applicable to only one of the three eyewitnesses.  Among other things, she cited a study from 2014 related to the interplay between stranger identification and exonerations, a study from 2016 related to multiple witnesses misidentifying the same suspect who was a stranger to them, and a 2018 study involving how timing factors into misidentification risk when a witness becomes familiar with an accused individual.[8]  Although this research potentially would have been relevant in assessing the credibility of Gomes's testimony because he did not know the defendant, trial counsel impeached Gomes on cross-examination with the fact that he initially failed to identify the defendant as the shooter.[9]  Thus, the jury had been made aware of the possibility that Gomes misidentified the defendant.  See Commonwealth v. Moore, 489 Mass. 735, 749 (2022) (newly discovered evidence providing alternate ground for impeachment insufficient to warrant new trial).  The research would not have been applicable to the testimony of Cripps and Martinez, one of whom was friendly with the defendant, and both of whom had spent hours with him just prior to the shooting.[10]  See, e.g., Commonwealth v. Denson, 489 Mass. 138, 145 (2022) (judge "concluded that the consistency among the various identifications and the corroborating evidence in the case 'obviate[d] the necessity for this jury to be any[] further enlightened . . . regarding mistaken identification testimony'").
            Second, eyewitness identification evidence was not the only evidence of the defendant's guilt.  Based on the trial testimony, when the defendant learned that the victim and others were packaging cocaine in the other apartment, he did not want to provide packaging supplies to them and was overheard discussing a plan to "kill the guy" with Pelon, demonstrating intent.  And the fact that the defendant left for Puerto Rico immediately after the shooting and adopted an alias demonstrated consciousness of guilt.  See Commonwealth v. Ashley, 427 Mass. 620, 624 (1998) (no abuse of discretion in excluding expert witness testimony where multiple eyewitnesses gave similar descriptions and additional evidence linked defendant to crime).
            Recently we affirmed the grant of a new trial that similarly was based on new eyewitness identification research.  See Gaines, 494 Mass. at 547.  In Gaines, the sole eyewitness to the crime identified the defendant, a stranger, from a photographic array only after receiving a call from someone purporting to be "Detective Murphy," who indicated that the witness had "identified the wrong persons" on his first attempt.  Id. at 526, 529.  Moreover, no physical evidence tied the defendant to the scene, and other circumstantial evidence tying the defendant to the scene had notable weaknesses.  Id. at 540.  The facts of this case stand in stark contrast to those presented in Gaines.
            Based on the foregoing, we affirm the judge's order denying the defendant's motion for a new trial.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services, Massachusetts Association of Criminal Defense Lawyers, New England Innocence Project, and the Innocence Project.
            [2] The evidence presented in the defendant's trial is summarized in Mercado, 466 Mass. at 142-145.  We provide a condensed version of events as the jury could have found them.
            [3] The defendant made several other arguments that were unsuccessful, including that he received ineffective assistance of counsel, that the Commonwealth withheld evidence, and that numerous reversible errors occurred during trial. 
            [4] After plenary review pursuant to § 33E, the appeal from the denial of any subsequent motions, such as the one at issue here, may not move forward without obtaining leave from a single justice of this court.  The single justice, acting as gatekeeper, must decide whether the appeal from a decision on any subsequent motion "presents a new and substantial question which ought to be determined by the full court."  G. L. c. 278, § 33E.  
            [5] The single justice rejected the defendant's other arguments; thus, they are not addressed here.  See Leaster v. Commonwealth, 385 Mass. 547, 548-549 (1982) (ruling of single justice acting as gatekeeper is final and unreviewable). 
            [6] We previously have differentiated between newly discovered and newly available evidence, considering the former as evidence not discoverable and the latter as evidence not obtainable (e.g., new witness testimony) or research not yet developed or not yet generally accepted by courts.  See Commonwealth v. Sullivan, 469 Mass. 340, 350 & n.6 (2014).  Here, the parties refer to the eyewitness identification science as "newly discovered."  As the standard is the same for both and because "newly discovered" is an apt description for new scientific research, we consider the terms to be interchangeable here.
            [7] We thus reject the Commonwealth's assertion that because some of the studies cited in the expert's report were published before 2009, and thus available to the defendant when he went to trial, the expert testimony was not newly discovered.  
            [8] Franklin also opined on the reliability of each of the three eyewitness identifications.  However, that aspect of her testimony would have been inadmissible at trial.  See Commonwealth v. Quinn, 469 Mass. 641, 646 (2014), and cases cited ("No witness, neither a lay witness nor an expert, may offer an opinion regarding the credibility of another witness").
            [9] Although Gomes identified the hooded man as the defendant at trial, he previously had identified someone else as the shooter in a photographic array.   
            [10] Trial counsel thoroughly explored the fact that Cripps and Martinez had spent much of the day smoking crack cocaine prior to the shooting, thus the jury had the opportunity to consider the reliability of their identification testimony.