NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-1187                                          Appeals Court

COMMONWEALTH  vs.  ROBERT J. LEONARD.

No. 22-P-1187

Barnstable.     November 1, 2023. – December 28, 2023.

Present:  Green, C.J., Blake, & Henry, JJ.

Motor Vehicle, Operating under the influence, License to
     operate.  Practice, Criminal, Voir dire, Jury and jurors,
     Bifurcated trial, Prior conviction, Instructions to jury.
     District Court.


Complaint received and sworn to in the Barnstable Division
of the District Court Department on July 20, 2020.

Complaint received and sworn to in the Plymouth Division of
the District Court Department on October 9, 2020.

After consolidation, the cases were tried before Edward F.
X. Lynch, J.


Robert J. Spavento for the defendant.
Rose-Ellen El Khoury, Assistant District Attorney, for the
Commonwealth.


GREEN, C.J.  On appeal from his convictions of various

charges stemming from his operation of a motor vehicle while

under the influence of intoxicating liquor (OUI),[1] the defendant
contends that the judge improperly denied his requests (1) for
attorney-led voir dire of prospective jurors, (2) to bifurcate
from the trial the charge of operating a motor vehicle with a
license suspended for OUI, and (3) for certain jury
instructions. Discerning in the defendant's claims no cause to
disturb the judgments, we affirm and address the defendant's
arguments in turn.

Background. We summarize the facts the jury could have
found based on the evidence at trial. On July 18, 2020, a
driver near the Sagamore Bridge saw a white Ford Explorer
driving erratically. He described the Explorer coming within
five to seven feet of the rear driver's side of his vehicle, at
a speed of approximately seventy-five miles per hour. The
driver of the Explorer, who was later identified as the
defendant, had a "very red face" as he tailgated another
vehicle. At one point, the defendant "almost went underneath
the steering wheel" to retrieve an object and, within a short

---

[1] The defendant was convicted of OUI, fifth offense, G. L.
c. 90, § 24 (1) (a) (1); negligent operation of a motor vehicle,
G. L. c. 90, § 24 (2) (a); leaving the scene of an accident
resulting in property damage, G. L. c. 90, § 24 (2) (a);
operating a motor vehicle with a license suspended for OUI,
G. L. c. 90, § 23; failure to stop for police, G. L. c. 90,
§ 25; and resisting arrest, G. L. c. 268, § 32B. The
Commonwealth filed a nolle prosequi on the charge of assault and
battery by means of a dangerous weapon, G. L. c. 265, § 15A (b).

time thereafter, "a metallic object . . . [went] out the window" of the Explorer.  The driver who observed the erratic operations called 911, and police responded.

A responding police officer located the Explorer, activated her cruiser's blue lights to signal the defendant to pull over, and, when he failed to pull over, activated her siren.  Other officers joined in pursuit of the Explorer.  The original responding police officer saw the Explorer illegally pass other vehicles in front of it on the road, and saw the defendant throw a paper bag out the window of the Explorer.  As the Explorer moved into an area with fewer vehicles around it, the officers attempted to box the Explorer in, but the defendant rammed the Explorer into one of the cruisers.  The defendant used the wrong entrance to the ramp leading to the Sagamore Bridge, and an officer saw it travel across the bridge at a speed "in excess of [ninety] miles per hour."  Eventually, while traveling at a high rate of speed, the Explorer struck another vehicle from behind, struck it again while passing on its left, and then went off the road into the median and struck a tree.

As officers approached the Explorer after it crashed into the tree, they observed the defendant "stumbling as he ran" from the vehicle.  The defendant had "bloodshot, glassy eyes, slurred speech, and a strong odor of alcohol."  The arresting officer formed the opinion that the defendant was intoxicated.  The

defendant was transported to a local hospital.  Empty alcohol bottles were located in the rear of the Explorer during an inventory search.[2]

1.  <u>Denial of attorney-led voir dire</u>.  On March 4, 2022, approximately seven weeks before trial was scheduled to occur, the defendant filed a motion for attorney-led voir dire of prospective jurors,[3] under District Court Standing Order 1-18 (2018) (standing order).[4]  On March 7, 2022, the motion was denied by margin endorsement but without explanation.  On the first day of trial, defense counsel raised the issue again and the judge stated how he would handle voir dire.  The defendant contends that the denial of his motion violated the clear mandate of the standing order requiring that a District Court judge allow attorney-led voir dire if properly requested before

---

[2] The Commonwealth introduced a photograph of beer cans and a beer bottle.  A copy of that exhibit was not provided to us, and no testimony shows whether the containers were full, partially full, or empty, but defense counsel in his closing argument described the containers as empty.

[3] The motion was styled as one for individual voir dire, but, in substance, the defendant requested permission for his counsel to conduct the voir dire examination of prospective jurors.

[4] Attorney-led voir dire in the District Court is governed by the standing order, whereas attorney-led voir dire in the Superior Court is governed by statute, see G. L. c. 234A, § 67D.

trial.[5]  We agree.[6]  However, our conclusion that the judge

erroneously denied the motion does not end our inquiry; it

remains to consider whether the error warrants any relief.

---

[5] As relevant to the issues in this appeal, the standing
order provides as follows:

> "In civil and criminal cases, the parties shall submit in
> writing:  any requests for attorney/party voir dire;
> motions in limine concerning the method of jury selection;
> proposed subject matters or questions for inquiry by the
> parties or judge; any proposed preliminary legal
> instructions to the venire or juror panels; the location
> within the courtroom where jurors and parties will stand or
> sit during voir dire; and any other matter setting forth
> the party's position regarding impanelment. . . .

> "In a criminal case, all voir dire related requests shall
> be filed by a date set by the Court, but not later than
> five (5) business days before trial. . . .

> "The trial judge shall allow attorney or party voir dire if
> properly requested according to the time as set forth in
> paragraph I above.  The trial judge has discretion
> regarding the scope and manner of voir dire.

> "The judge should, at a minimum, allow the attorneys or
> parties to ask reasonable follow-up questions seeking
> elaboration or explanation concerning juror responses to
> the judge's questions, or concerning any written
> questionnaire."

[6] The Commonwealth does not dispute that the standing order
requires a District Court judge to allow attorney-led voir dire
on a properly submitted request but asserts that the defendant's
motion was untimely because it was filed more than twenty-one
days after the trial date was assigned.  See Mass. R. Crim. P.
13 (d) (2), as appearing in 442 Mass. 1516 (2004), which
requires all pretrial motions not seeking discovery to be filed
within such time.  However, the standing order specifically
provides that "[i]n a criminal case, all voir dire related
requests shall be filed by a date set by the Court, but not
later than five (5) business days before trial."  The

Though the defendant asserts that the violation of the standing order is of constitutional magnitude, implicating his right to trial by an impartial jury under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, he cites no authority for the proposition that a violation of the standing order constitutes a denial of that right, or that it requires automatic reversal of a conviction. We view the standing order not as a constitutional imperative, but as a mechanism developed by the chief justice of the District Court to support accomplishment of the objective of empanelling a fair and impartial jury.[7] We accordingly consider

---

Commonwealth did not raise any objection directed to timeliness of the motion when it was filed, and the judge made no reference to timeliness in his denial of the motion. Under the principle that the specific controls the general, see Doe v. Attorney Gen. (No. 1), 425 Mass. 210, 215-216 (1997), and in the absence of any engagement of the question of timeliness in the trial court, we consider the timeliness of the defendant's request for voir dire to have been governed by the time limits set forth in the standing order.

[7] General Laws c. 218, §§ 43-43B, authorizes the chief justice of the District Court to make and promulgate rules of practice and procedure, standing orders, and forms, to regulate the practice and conduct of business in the District Court. Procedures regulating the issuance of standing orders are set forth in Trial Court Rule V, which provides, among other things, for publication of standing orders and review by the "[c]hief [a]dministrative [j]ustice" of the trial court before they become effective. By successive amendments to G. L. c. 211B, § 9, the title of the chief administrative justice was changed, first to the chief justice for administration and management, see St. 1992, c. 379, § 77, and then to its current form, the chief justice of the trial court, see St. 2011 c. 93, § 52.

whether the judge's violation of the standing order gave rise to any prejudice and conclude that the defendant has not shown prejudice. See Commonwealth v. Leopold L., 96 Mass. App. Ct. 796, 808 (2020) (applying prejudicial error standard to violations of Juvenile Court Standing Order 1-17 and G. L. c. 119, § 56, concerning continuances).

The defendant broadly suggests that allowing counsel to question prospective jurors directly improves the process of discovering possible juror prejudice. While that may generally be true, the defendant has not shown that allowing counsel to question the prospective jurors here would have improved the process. The judge asked follow-up questions to the jurors on specific topics, within reason, when the parties requested them. Though the defendant asserts on appeal that the judge improperly denied certain questions the defendant wished to pose to the jurors, the portions of the transcript cited by the defendant reveal that the judge declined to ask those questions because he addressed them in substance in other ways, and the defendant has not identified any topic he wanted to explore that was not covered by the judge's questions. It is settled that though the judge must determine that jurors are impartial, the "judge has broad discretion as to the questions to be asked, and need not put the specific questions posed by the defendant." Commonwealth v. Morales, 440 Mass. 536, 548-549 (2003), quoting

Commonwealth v. Sanders, 383 Mass. 637, 641 (1981). Even in the Superior Court, where the right of counsel to conduct attorney-led voir dire of prospective jurors is secured by statute, see G. L. c. 234A, § 67D, the scope of questioning is subject to the sound discretion of the judge. See Commonwealth v. Dabney, 478 Mass. 839, 848-851, cert. denied, 139 S. Ct. 127 (2018). We note as well that the defendant raised no objection when, on the conclusion of empanelment, the judge found that the jurors stood indifferent in the case. See G. L. c. 234A, § 67A. Accordingly, the judge's denial of the defendant's request for attorney-led voir dire, even though error, on this record, provides no basis for reversal of the defendant's convictions.[8]

2. Bifurcation. The defendant also contends that the judge erred in denying his request to bifurcate from the trial the charge of operating a motor vehicle with a license suspended for OUI, due to the potential for prejudice from evidence of prior bad acts. The question is controlled in material respects by our decision in Commonwealth v. Beaulieu, 79 Mass. App. Ct.

---

[8] We do not intend that our denial of relief to the defendant in the present case be construed to excuse the violation of the mandate set forth in the standing order to allow attorney-led voir dire when requested. To the extent there should or might arise a concern that judges in the District Court regularly ignore the mandate of the standing order, it is in the first instance a matter for oversight by the chief justice of the District Court, or may be raised in a future case based on a properly developed record.

100, 103 (2011), where we rejected the contention that admission of evidence of a prior conviction caused prejudice to the jury's consideration of the more recent charge. In the present case, the Commonwealth offered an attested copy of a certificate from the registry of motor vehicles relating to the suspension of the defendant's license, rather than a record of the conviction itself. As in Beaulieu, the judge gave limiting instructions on the use of such evidence at the time the evidence was offered and again during his final instructions to the jury, see id.; we presume that the jury followed them, see Commonwealth v. Cheremond, 461 Mass. 397, 414 (2012), abrogated on other grounds by Commonwealth v. Wardsworth, 482 Mass. 454 (2019). Likewise, the prosecutor's references to the prior offense were appropriately limited to the proper purpose of such evidence, and he did not mention it during his closing argument. See Beaulieu, supra. Just as the admission of such evidence in Beaulieu caused no undue prejudice, the judge's denial of the defendant's request to bifurcate the trial here did not constitute an abuse of discretion. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

3. Jury instructions. With respect to the jury instructions, the defendant first claims error in the judge's refusal to administer a jury instruction that the defendant proposed based on the model jury instruction on implicit bias.

This was not a case where the victim and defendant were of a different race or ethnicity, or where implicit bias was otherwise at the forefront, and the judge's general instructions reminded jurors "not [to] allow bias, whether held consciously or subconsciously, to interfere with [their] ability to fairly evaluate the evidence, apply the law as . . . instruct[ed] . . . , or render a fair and impartial verdict based on the evidence before [them]."  The judge did not abuse his discretion in declining to administer the defendant's requested instruction.[9]

We likewise discern no abuse of discretion in the judge's refusal to administer the supplemental instruction requested by the defendant on prejudice.[10]  "A defendant is 'not entitled to

---

[9] Nonetheless, we note that in a statement addressing the model instruction, the justices of the Supreme Judicial Court said that "[t]he instruction should be given at all criminal and civil trials," and we encourage judges to do so.

[10] The requested instruction would have advised the jury as follows:

"It would be improper for you to allow any feelings you might have about the nature of the crime to interfere with your decision.  Any person charged with any crime is entitled to the same presumption of innocence, and the Commonwealth has the same burden of proving the defendant's guilt beyond a reasonable doubt. . . .  The word 'verdict' comes from two Latin words meaning 'to tell the truth,' and that is what the law looks to your verdict(s) to do based solely on the evidence in the case.  Justice is done when a verdict is returned based on the evidence and the law regardless of whether that verdict is guilty or not guilty."

any particular instruction as long as the charge as a whole was adequate.'" Commonwealth v. Comtois, 399 Mass. 668, 676 (1987), quoting Commonwealth v. Sherry, 386 Mass. 682, 696 (1982). The judge instructed the jury to "base [their] verdict on the evidence and any reasonable inferences," and also instructed the jury on the presumption of innocence. Nothing more was required on this point.

There was also no abuse of discretion in the judge's denial of the defendant's request for a Bowden instruction. See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). Nothing in the record before us suggests that the judge prevented the defendant from arguing that there were inadequacies in the police investigation. To the contrary, defense counsel cross-examined the police officers on the lack of an investigation at the crash site. "[T]he Bowden instruction may be given in the judge's discretion, but it is never required." Commonwealth v. Bresilia, 470 Mass. 422, 439 (2015).

Finally, there was no abuse of discretion in the judge's denial of the defendant's request for a jury instruction on unrecorded custodial interrogations. See Commonwealth v. DiGiambattista, 442 Mass. 423, 446-448 (2004). Though the defendant was taken into custody, there was no evidence that he was interrogated while in custody, and no evidence of any

statements he made while in custody.  Any such instruction would likely have confused the jury.

Judgments affirmed.